HILL *et al.* v. HILL *et al.*

No. 5884.   Opinion Filed July 25, 1916.

Rehearing Denied November 21, 1916.

(160 Pac. 1116.)

**INDIANS—Lands—Descent and Distribution.**   Where an allottee, a Choctaw Indian, duly enrolled as such, died January 23, 1913, intestate, after receiving his allotment, leaving him surviving no father nor mother, but brothers and sisters of the whole blood and a brother and sister of the half blood, Rev. Laws 1910, secs. 8417, 8418, 8427, construed, and **held** that he died seised of an ancestral estate, and that the brothers and sisters of the whole blood are entitled to take the allotment to the exclusion of a brother and sister of the half blood.

(Syllabus by the Court.)

Sharp and Thacker, JJ., dissenting.

*Error from District Court, Garvin County;*
*R. McMillan, Judge.*

Action by James A. Hill against John Edgar Hill and others. From the judgment, defendants John Edgar Hill and others bring error. Reversed, with directions.

*Alvin F. Pyeatt,* for plaintiffs in error.

*Blanton & Andrews, George I. Jordan,* and *Thompson, Patterson & Hampton,* for defendants in error.

TURNER, J. On March 11, 1913, James A. Hill, one of the defendants in error, in the district court of Garvin county, sued John and William Hill and Uda Polk, adults, and Harry and Susie Hill, minors, by their guardian, William Hill, and Ruth Hill, by her guardian, Mattie Hill. The object of the suit was to establish plaintiff's interest in the land described in the petition to be one-seventh. and for partition of the tract. The case was tried on an agreed statement of facts, which are: That prior to the bringing of the suit, John T. Hill, a noncitizen of the Choctaw Nation, the father of plaintiff, married a white woman, also a noncitizen of the Choctaw Nation, who died, leaving her surviving as her only heir at law plaintiff, James A. Hill, the issue of said marriage; that thereafter John T. Hill married one Susan Walmer, a Choctaw Indian by blood, who died, leaving her surviving as the issue of said marriage, said John, William, Harry, and Susie Hill, and Uda Polk; that thereafter he married and died, leaving him surviving said Mattie Hill, his third wife, and Ruth Hill, the sole. issue of that marriage, and who is not a member of any tribe or nation of Indians; that Thomas J. Hill, another child of the marriage of Susan and the father of plaintiff, after receiving his allotment in the Choctaw Nation, to wit, on January 29, 1913, died intestate at the

age of nine years, without father or mother, leaving him surviving as his only heirs at law plaintiff and Ruth Hill, a brother and sister of the half blood, and the other defendants, brothers and sisters of the whole blood.

The inquiry arising upon the state of facts is: Did the brother and sister of the half blood inherit equally with. the brothers and sisters of the full blood? The court held they did, but the court was wrong. Rev. Laws 1910 read:

"Sec. 8417. The property, both real and personal, of one who dies without disposing of it by will, passes to the heirs of the intestate, subject to the control.  *   *   *

"Sec. 8418. When any person having title to any estate not otherwise limited by marriage contract, dies without disposing of the estate by will, it descends and must be distributed in the following manner:  *   *   *

"Third. If there be no issue, nor husband nor wife, nor father, nor mother, then in equal shares to the brothers and sisters of the decedent  *   *   *"

—which, standing alone, means that the brothers and sisters of the half blood inherit equally with the brothers and sisters of the whole blood. For it is said in *Estate v. Smith,* 131 Cal. 433, 63 Pac. 729, 82 Am. St. Rep. 358, that the expression "brothers and sisters of decedent," used in subdivision 2 of this same section, includes those of the half blood, as well as those of the whole blood. And that, too, whether, as we said in *Jefferson v. Cook,* 53 Okla. 272, 155 Pac. 852, the estate is ancestral or a new acquisition. But, as section 8427, *Id.,* is also a part of the governing statute, the question is: Does that section change the devolution provided for in the preceding section? It does. It reads:

"Kindred of the half blood inherit equally with those of the whole blood in the same degree, unless the inheritance come to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestors must be excluded from such inheritance."

Which means that brothers and sisters of the half blood may inherit equally with those of the whole blood in the same degree, unless the estate is ancestral.

Section 4818 is substantially the same as section 1386 of Civil Code of California, and section 8427 *supra*, identical with section 1394 of that Code. In *re Pearsons*, 110 Cal. 524, 42 Pac. 960, speaking of the Code, the court said:

"Our Code has no allusion to 'the blood of the first purchaser,' and makes no attempt at any distinction founded upon the sources from which the estate of a decedent may have been derived, except in the single instance of kindred of the 'half blood' "

—and speaking to section 1394 (section 8427, *supra*), said:

"The section simply means that kindred of the half blood shall inherit equally with those of the whole blood, except in a certain case, and, in that case kindred of the half blood shall not inherit. * * * We think the plain grammatical construction of the clauses under consideration is that the kindred of the intestate of the half blood shall inherit equally with those of the whole blood, except that if the estate is ancestral only, such kindred, of the half blood as are of the blood of the ancestor from whom the estate came shall inherit."

See, also, *Estate of Smith*, 131 Cal. 433, 63 Pac. 729, 82 Am. St. Rep. 358; *Estate of Lynch*, 132 Cal. 214, 64 Pac. 284.

The question then is: Did Thomas J. Hill die seised of an ancestral estate in the land in question, and, if so, who are entitled to share in his allotment? That he died seised of an ancestral estate is no longer an open question in this jurisdiction, having been settled in *Shulthis v. McDougal*, 170 Fed. 529, 95 C. C. A. 615, and *Pigeon v. Buck*, 38 Okla. 101, 131 Pac. 1083.

We are therefore of opinion that, as the allotment in question came to Thomas J. Hill, not by purchase, but by descent, and is ancestral, his brothers and sisters of the whole blood are entitled thereto to the exclusion of his brothers and sisters of the half blood; that is, to the exclusion of plaintiff and Ruth Hill, and for that reason the judgment of the trial court is reversed, with directions to set aside the judgment complained of and to enter judgment pursuant to the views herein expressed.

All the Justices concur, except SHARP and THACKER, JJ., who dissent.

SHARP, J. (dissenting). The opinion of the court is, in my judgment, founded upon an incorrect conception of the statute governing the devolution of the title to allotted lands, where the next of kin consists of brothers and sisters of both the half blood and the whole blood. It is rested upon the premise that the allotment of Thomas J. Hill, a Chickasaw Indian, was an ancestral estate, under the rule announced in *Shulthis v. McDougal*, 170 Fed. 529, 95 C. C. A. 615, and companion cases, and followed by this court and the Supreme Court of the United States in *Pigeon et al. v. Buck et al.*, 38 Okla. 101, 131 Pac. 1083; *Id.*, 237 U. S. 386, 35 Sup. Ct. 608, 59 L. Ed. 1007; *McDougal v. McKay*, 43 Okla. 251, 142 Pac. 987; *Id.*, 237 U. S. 372, 35 Sup. Ct. 605, 59 L. Ed. 1001, construing section 2531, Mansfield's Digest of the Laws of Arkansas, in

force by act of Congress in the Indian Territory at the time the descent in said several cases was cast. Applying the rule there announced, in construing section 8427, Rev. Laws 1910, it is held that kindred of the half blood are excluded from inheriting equally with those of the full blood in the same degree, on the theory that an allotment constitutes an estate of inheritance from the tribal parent or parents within the meaning of said section. The Arkansas statute construed in the cases cited provided that:

"In cases where the intestate shall die without descendants, if the estate come by the father, then it shall ascend to the father and his heirs; if by the mother, the estate, or so much thereof as came by the mother, shall ascend to the mother and her heirs; but if the estate be a new acquisition it shall ascend to the father for his lifetime, and then descend, in remainder, to the collateral kindred of the intestate in the manner provided in this act.  *  *  *"

Section 8427 of our statutes, which it is claimed excludes from the right of inheritance the brother and sister of the half blood, reads:

"Kindred of the half blood inherit equally with those of the whole blood in the same degree, unless the inheritance come to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestors must be excluded from such inheritance."

Under the Arkansas law of descent, so long as there were descendants, it was immaterial whether the real estate was ancestral or a new acquisition. Turning to the ascending line, in determining the character of the estate cast, it was necessary to first determine whether the estate was ancestral or a new acquisition. This was the difficult

question before the court in *Shulthis v. McDougal* and *McDougal v. McKay, supra.*

But, first, it is important to see whether, in the cases upon which the opinion is rested, it is held that an allotment is an estate of inheritance under the Arkansas statute. The leading case is that of *Shulthis v. McDougal,* in which at the outset of the opinion emphasis was laid upon the fact that section 2531 fitted into neither of the classes named therein, the court using this language:

"The lands of that tribe fit into neither of the classes mentioned in the statute. They did not come to a member of the tribe by inheritance from any ancestor, nor could they be spoken of with propriety as a purchase. In applying the statute in this case, therefore, we shall have to proceed by analogy only."

And again, after referring to the tribal governments, and the possessory rights or titles to land recognized by the Indian tribes in the Indian Territory prior to allotment, it was further said:

"But, when, as here, the time came to disband the tribe, its ownership as a political society could no longer continue, and the division of its property was far more nearly akin to the partition of property among tenants in common than the grant of an estate by a sovereign owner. Under such a scheme it cannot be said that the property which passed to an allottee is a new right or acquisition created by the allotment. The right to the property antedates the allotment, and is simply given effect to by that act. Viewing the tribal property and its division in this light, Andrew J. Berryhill acquired his right to the land in question by his membership in the tribe. It was his birthright. It came to him by the blood of his tribal parents, and not by purchase. In applying the Arkansas statute, we shall accomplish the purpose of Congress and the Creek Nation best by treating the lands not as a new

acquisition by him, but as an inheritance from his parents as members of the tribe."

The opinion of this court in *Pigeon et al. v. Buck et al.,* and companion cases, simply followed the rule announced by the Circuit Court of Appeals in *Shulthis v. McDougal,* while in *Lovett v. Jeter et al.,* 44 Okla. 511, 145 Pac. 334, it was said of lands allotted to the intestate, "such property passes, in such cases, as if by inheritance." In *McDougal v. McKay, supra,* the Supreme Court, after reviewing the opinions of the Circuit Court of Appeals and of this court in the cases last named, said, in addition thereto:

"We recognize the unusual difficulties surrounding the problem presented upon the record, and appreciate the very forceful arguments offered in support of the conflicting theories. The circumstances are novel, and the canons of descent contained in Mansfield's Digest are not precisely applicable thereto; but these rules must be accommodated to the facts and the great purpose of Congress effectuated as nearly as may be, and not only would it be improper for us to disregard the effect of the decisions already announced by the Circuit Court of Appeals and the Supreme Court of Oklahoma, which are supported by cogent reasoning, but, considering the peculiar and rapidly changing conditions within that state, especial consideration must be accorded to them. We accordingly accept the doctrine announced therein, and hold the property must be treated as an ancestral estate which passed in accordance with the applicable provisions of chapter 49, Mansfield's Digest."

From these opinions it will be seen, and readily, that there has been no pronouncement of either of said courts that an allotment of land constituted an estate of inheritance, but that, on the other hand, in construing and giving effect to section 2531 of the Arkansas statute, an allotment

would be so treated, for the reason that it possessed more nearly the characteristics of such an estate than of an estate by purchase. Sight must not be lost of the fact that the court there expressly held that an allotment of land did not come to a member of the tribe by inheritance from any ancestor. The doctrine in the Shulthis Case was the child of expediency, the creature of a statute unsuited to the title involved, and has ever been recognized by the courts to be a strained construction; but one that was justified because an allotment was more akin to an ancestral estate than to a new acquisition. To hold that the allotment was a new acquisition, and that the fee title passed to the collateral kindred, brothers or sisters, or uncles and aunts, or cousins and other remote relatives, according to their proximity to the deceased, subject to a life estate in the surviving father, and then a life estate over to the surviving mother, was a conclusion to be avoided as one opposed to natural justice. By rejecting the rule that the allotment was a new acquisition, the court gave the statute an equitable construction. Natural justice preferred the father and mother to the collateral kindred, and it is a well-settled rule of statutory construction that:

"In construing statutes it is not reasonable to presume that the Legislature intended to violate a settled principle of natural justice. * * * Courts, therefore, in construing statutes, will always endeavor to give such an interpretation to the language used as to make it consistent with reason and justice."

Black on Interpretation of Laws, p. 100; Sutherland on Statutory Construction, sec. 490. Under the doctrine of the Shulthis Case, as applied to the Arkansas law, the death of one or both of the parents was not a condition precedent to the allotment being treated as ancestral. It

was ancestral "if the estate come by the father," or "if the estate come by the mother." In other words, as applied in the Shulthis Case, the rule of descent was worked out through the blood of the tribal parent, and was not made to depend upon inheritance from a deceased ancestor, as is commonly the case. Having held that an allotment was not a new acquisition, no alternative remained save to hold that it was in the nature of an estate of inheritance; otherwise section 2531 of the statute, there under consideration, would have been rendered nugatory. Because of the anomaly and the injustice that would have attached, had a different rule been followed, it was deemed proper to treat an allotment as an inheritance from the tribal parents, though technically such was not the case.

Turning to the statutes of this state, and under which the descent was cast, no need of "treatment" of the statute appears. No reasoning by analogy, no fiction of law, need be resorted to. The statute "fits," whereas the Arkansas statute did not. Under the third subdivision of section 8418, Rev. Laws 1910, if there be no issue, nor husband nor wife, nor father nor mother, an estate not otherwise limited by marriage contract, of one who dies without disposing of it by will, descends in equal shares to the brothers and sisters of the decedent, and to the children of any deceased brother or sister, by right of representation. The only exception to this rule is that named in section 8427, providing that if the inheritance come to the intestate by descent, devise, or gift of some one of his ancestors, those who are not of the blood of such ancestor must be excluded from such inheritance. Now we have seen that the estate of Thomas J. Hill was not, technically at least, an estate of inheritance; that it

did not come to him by devise or gift of some one of his ancestors. Except as provided by section 8427, kindred of the half blood share equally with those of the full blood in the same degree. The statute is but the local enactment of a very general rule of descent. *In re Smith's Estate,* 131 Cal. 433, 63 Pac. 729, 82 Am. St. Rep. 358. As said by Judge Cooley, in *Rowley v. Stray,* 32 Mich. 75:

"Ours is but the expression of a general policy which has always characterized our legislation, * * * and which, * * * in most respects, has put the half blood on a footing of equality with the whole blood in the law of descents. * * * A discrimination against the half blood is the exception, and is not to be extended beyond the obvious intent."

Also, as said in *Lynch v. Lynch et al.,* 132 Cal. 214, 64 Pac. 284:

"It seems to us that the only possible question is whether the section includes the brothers and sisters of the half blood. The statute makes no distinction between brothers or sisters of the half blood and those of the whole blood. The well-established rule in this country is that where the term 'brothers or sisters' is used without limitation, it includes half brothers and half sisters."

In the very able opinion of *Cliver v. Sanders,* 8 Ohio St. 501, the same rule is announced. It is also said, in respect to the history of the rule:

"The English canon, which excluded the half brother from inheriting real estate, did not do so on the ground that the half brothers of an ancestor were not his brothers, much less on the idea that they were not of the blood of such ancestor, but because they were not, presumptively, of the blood of the first feud or purchaser from whom the estate was originally derived. The rule and its reason have no application whatever in our statute of descents, which finds the ancestor in the person from whom it was im-

mediately inherited, and not in the original first feudatory, or purchaser. The term ancestor, in our statute, has no reference whatever to such first purchaser, but refers to the person from whom the intestate derived the estate."

In the well-considered opinion of Judge Story, in *Gardner v. Collins et al.*, 2 Pet. 58, 7 L. Ed. 347, it is said in the syllabus:

"The phrase 'of the blood,' in the statute, includes the half blood; this is the natural meaning of the word 'blood,' standing alone, and unexplained by any context. Half brother or sister is of the blood of the intestate; for each of them has some of the blood of the common parent in his or her veins. A person is, with the most strict propriety of the language, affirmed to be of the blood of another, who has any, however small a portion, of the same blood, derived from a common ancestor. In the common law, the word 'blood' is used in the same sense."

See, also, *Prescott v. Carr*, 29 N. H. 453, 61 Am. Dec. 652, and note, and *Anderson v. Bell et al.*, 140 Ind. 375, 39 N. E. 735, 29 L. R. A. 541, where it is held:

"Brothers and sisters of the half blood are included in a statutory provision for descent to brothers and sisters, unless a contrary intention appears."

The English canons of inheritance excluding the half blood being of feudal origin, no occasion for their observance exists in our jurisprudence. Indeed the rule has been abolished in England (St. 3 and 4 Will. IV; 2 Wood, sec. 150, note). The exclusion of the half blood being looked upon as both unreasonable and unnatural, and there being no necessity growing out of our tenure for its continuance, the rule has been abrogated, except where the question is dealt with by the Legislature, and is therefore dependent upon the terms and provisions of the statute. Constituting an exception in the law of descent,

before those otherwise qualified should be excluded from the rights of heirs, the statute upon which reliance is placed must clearly disclose such purpose and leave nothing to implication.  As the rule has very generally been criticized as harsh and unjust, courts should not extend the statute beyond the clear import of the language used, or enlarge its operation so as to embrace estates not specially included, even though standing in close analogy.

In *Moffett et al. v. Conley*, 59 Okla. —, 163 Pac. 118, this day decided, quoting from Blackstone's Commentaries, sec. 204, in respect to titles by descent, we said:

"Descent, or hereditary succession, is the title whereby a man on the death of his ancestor acquires his estate by right of representation, as his heir at law.  An heir, therefore, is he upon whom the law casts the estate immediately upon the death of the ancestor; and an estate, so descending to the heir, is, in law, called the inheritance."

It is of such estates only that the statute makes the exception against the brothers and sisters of the half blood.  It is hardly necessary to emphasize the fact that the allotment of Thomas J. Hill did not come to him by descent of some one of his ancestors.  On the other hand, it is clear that it came to him in his own right, as an enrolled citizen of the Chickasaw Nation or Tribe of Indians.  By virtue of this right, and his act in segregating and having set aside to him from the tribal lands of the Chickasaw Nation the lands in question, Hill in his own name, by a joint patent from the Principal Chief of the Choctaw Nation and the Governor of the Chickasaw Nation, obtained title to the lands of which he died seised.  This title neither came to him by inheritance, devise, nor gift of some one of his ancestors, and was not therefore an estate of inheritance within the meaning of section

8427, Rev. Laws 1910. His allotment set apart to him through the supervision of the general government, acting for the Indians, was in no wise dependent upon the fact that a particular ancestor was living or dead. That he did not take the title to these lands by purchase, or that his title is difficult of classification according to common-law principles, does not warrant us in holding that he therefore took said lands by inheritance, or in the course or nature of inheritance.

The statute which it is claimed excludes the brothers' and sisters of the half blood expressly provides that such kindred shall inherit equally with those of the whole blood in the same degree, unless the inheritance come by descent, devise, or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestors must be excluded from such inheritance. So that unless the estate involved is of the excepted class, those of the half blood must be included, under the terms of the statute. The exception to the general rule of descent fixed by statute must be strictly construed. Lewis' Sutherland on Statutory Construction, sec. 351. It was so held in *Brewer et al. v. Rust,* 20 Okla. 776, 95 Pac. 233, where we said:

"A proviso in a statute is to be strictly construed. It takes no case out of the enacting clause which is not fairly within the terms of the proviso."

Whether the provision of the statute be considered as partaking of the character of an exception or a proviso, the result is the same. The office of a proviso is to restrain or modify the enacting clause of a statute. As said by Story, J., in *United States v. Dickson,* 15 Pet. 165, 10 L. Ed. 689:

"The general rule of law, which has always prevailed and become consecrated almost as a maxim in the in-

terpretation of statutes, that where the enacting clause is general in its language and objects and a proviso is after-. wards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms. In short, a proviso carves special exceptions, only out of the enacting clause; and those who set up any such exception must establish it as being within the words, as well as within the reason thereof."

Neither the statute, properly construed, nor reason requires that kindred of the half blood of Thomas J. Hill be excluded from participating as heirs in the distribution of his estate.

We need not dwell upon the fact that the estate· did not come to Hill by devise or gift of some one of his ancestors, as distinguished from descent from such ancestors. These terms are too well understood to require at our hands the citation of authorities.

For the reasons given, I am unable to concur in the majority opinion, and am authorized to say that Mr. Justice THACKER concurs in these views.

———

THACKER, J.   I fully concur in the dissenting opinion of Mr. Justice SHARP in this case. The cases upon which the majority opinion is grounded do not hold that such estates are estates of inheritance under the common law or the law creating them, nor otherwise, except in respect to their relation to chapter 49, sec. 2531, Mansfield's Digest of the Statutes of Arkansas of 1884, in force in Indian Territory prior to statehood. To the contrary, those cases show that such estates are not absolutely estates of inheritance in their inherent nature, and are only so within the broad meaning of this Arkansas statute of

Hill et al. v. Hill et al.

descent and ascent.  In other words, those cases merely construe this Arkansas statute in its application to such estates, and hold that such estates are ancestral within the breadth of meaning of that statute, notwithstanding their lack of some of the essential inherent qualities of ancestral estates.  In the instant case there is no question of what is an ancestral estate within the scope of the broad meaning of this Arkansas statute, nor is there any question of construction or application of that statute presented to this court.  The question here is as to whether such estates are estates of inheritance within the meaning of and excepting the less comprehensive provision of our own statute, which must be construed as narrowly as the language used will permit.  Under this provision of our statute an estate is not one of inheritance unless it clearly and absolutely belongs to this class of estates; and an estate, partaking of the nature in part only of an estate of inheritance, cannot be so classified here.  And, as clearly shown by the dissenting opinion of Mr. Justice SHARP, these estates are not estates of inheritance within the meaning of this exception to our own statute.