## McKAY v. ROE.

No. 11851—Opinion Filed Sept. 25, 1923.

Rehearing Denied Dec. 11, 1923.

(Syllabus.)

**1. Indians—Descent and Distribution.**

Where an enrolled Creek freedman died July 7, 1911, leaving surviving her a noncitizen father, brother, sisters, and a niece, the allotment of such deceased allottee is inherited by her father to the exclusion of her brothers, sisters and niece. Jefferson et al. v. Cook et al., 53 Okla. 272, 155 Pac. 852; Crouthamel v. Welch et al., 53 Okla. 288, 156 Pac. 30

**2. Same—Applicability of Statutes.**

Section 8985, Snyder's Statutes 1909, 7th subdivision, providing:

"If the decedent leaves several children, or one child and the issue of one or more children, and any such surviving child dies under age, and not having been married, all of the estate that came to the deceased child by inheritance from such decedent, descends in equal shares to the other children of the same parent, and to the issue of any such other children who are dead, by right of representation,"

has no application under the facts stated in the preceding paragraph.

Error from District Court, Muskogee County; Benjamin B. Wheeler, Judge.

Action by Mattie Roe, a minor, by her guardian and next friend, John Roe, against Edmond McKay, to quiet title. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

George S. Ramsey, Edgar A. DeMeules, Malcolm E. Rosser, and Villard Martin, for plaintiff in error.

Neff & Neff, for defendant in error.

KENNAMER, J. The question presented by this appeal is the descent of the lands allotted to Elijah Roe, who died July 7, 1911. Elijah Roe was an enrolled Creek freedman, and died intestate, without issue, leaving no wife or mother, but left surviving him his father, Marshall Roe, who was a noncitizen of the Creek Nation, being enrolled as a Seminole, George Roe and John Roe, brothers, Mollie Jackson, nee Roe, Elizabeth Daniels, nee Roe, Sarah Redmouth, nee Roe, sisters, and Mattie Roe, a minor, and sole heir at law of Martha Roe, deceased sister of the allottee.

Mattie Roe, a minor, by her guardian instituted this action against Edmond McKay, defendant, alleging that she inherited a one-sixth interest in the lands allotted to Elijah Roe, and to quiet her title. McKay filed an answer, asserting ownership to the lands allotted to the deceased allottee under a warranty deed executed to him by Marshall Roe. The trial court rendered judgment in favor of the plaintiff in the action, and the defendant, McKay, prosecutes this appeal to reverse the judgment of the trial court.

It is conceded that in the cases of In re Estate of Robert Pigeon, 81 Okla. 180, 198 Pac. 309; Teague v. Smith, 85 Okla. 12, 204 Pac. 439; Harrison v. Harrison, 87 Okla. 91, 209 Pac. 737; Murray v. Goad, 88 Okla. 300, 213 Pac. 73. and Jackson v. McKay, 89 Okla. 119, 213 Pac. 876. this court held that the applicable statutes of Oklahoma providing for the descent and distribution of estates of Indians dying since statehood controls this case. But counsel for defendant in error contend that the 7th subdivision of section 8985 of Snyder's Compiled Laws 1909, which was in force on the date of the death of the deceased, is applicable in determining the heirs of said deceased allottee. This 7th subdivision of the statute reads as follows:

"If the decedent leaves several children, or one child and the issue of one or more children, and any such surviving child dies under age, and not having been married, all of the estate that came to the deceased child by inheritance from such decedent descends in equal shares to the other children of the same parent, and to the issue of any such other children who are dead, by right of representation."

We are unable to concur in this contention of counsel for the defendant in error. This identical section of the statute was construed by the Supreme Court of California in the case of the Estate of Felicidad Carillo De Castro v. Barry, 18 Cal. 97, in which the court held:

"The clause in question provides for a specific and peculiar state of facts; therefore, there is no contradiction between it and the general provisions going before, for these last provide the usual rule, while the latter clause provides the unusual rule, or the rule governing the particular case recited. This is not a contradiction, but only an exception. It is as if the second clause read: 'If the intestate shall leave no issue, or husband, or wife, the estate shall go to his or her father; provided, that if any person shall die leaving several children, and any one of them shall die unmarried, etc., the share of such decedent child coming from such deceased parent shall go to the surviving children of the same parent.' "

It is clear from the 7th subdivision of the statute, supra, that it is an exception to the general provisions preceding it, and that in order for said section to be applied, the particular facts provided for in said section must exist: First, if the decedent leaves several children or one child and the issue of one or more children; second, and any such surviving child dies under age, and not having been married; and third, all of the estate that came to the deceased child by inheritance from such decedent: It is obvious that this statute has no application to the devolution of the instant case, for the reason the estate in question is the individual allotment of the deceased allottee, and we cannot agree with the contention that in applying the Oklahoma law of descent and distribution this kind of an allotment will be treated as having come to

the allottee by inheritance for the reason that one of the parents of the deceased allottee belonged to the same tribe of Indians of which such deceased allottee was a member.

The phrase, "all of the estate that came to the deceased child by inheritance from such decedent," plainly means an estate of inheritance, that came from his father or deceased child by descent, gift, or devise, and not by purchase.

"An ancestral estate ordinarily is realty which came to the intestate by descent or devise from a now dead ancestor or by deed of actual gift from a living one, there being no other consideration than that of blood. Nonancestral property is realty which came to the intestate in any other way." Walker's Am. Law (10th Ed.) 392; Martin v. Martin, 98 Ark. 93 and 99, 135 S. W. 348; Brown v. Whaley, 58 Ohio St. 654 and 666, 49 N. E. 479, 65 Am. St. Rep. 793; 2 C. J. 1335.

This court, in the case of Crouthamel v. Welch et al., 53 Okla. 288, 156 Pac. 302, in an opinion by Mr. Justice Sharp, held, that the 7th subdivision of the statute under consideration had no application to the individual allotment of a Choctaw Indian who died October 6, 1910, at the age of 12 years, and quoted with approval the case of Nash et ux. v. Cutler, 16 Pick. (Mass.) 491, wherein the court said:

"That when any child shall die under age, not having been married, his share of the inheritance, that come from his father or mother, shall descend in equal shares to his father's or mother's other children then living, respectively, and to the issue of such other children as are then dead, if any, by right of representation."

It is plain from the 7th subdivision that it provided that that part of the estate coming to a minor child from a parent should go to the other children of such parent the same as if such child had never existed. See Jefferson et al. v. Cook et al., 53 Okla. 272, 155 Pac. 852.

In order for the 7th subdivision of the statute, supra, to be invoked as the applicable statute, the allotment must have been derived from one of the parents of the deceased allottee, and the parent of the deceased allottee never having been seized of the allotment, it is obvious the statute has no application, but the estate is controlled by the 2nd subdivision of the section of the statute.

In the case of Bonewell et al. v. Smith et al., 91 S. E., page 759, the Supreme Court of Appeals of Virginia, construing a similar statute, used this language:

"It seems to us plain from the language of the statute that, on failure of issue of an infant last seized, the inheritance descends to the infant's kindred on the side of that parent from whom the real estate was derived, when, as in the case at bar, there are such kindred living at the death of the infant."

A careful consideration of the Oklahoma statutes of descent and distribution discloses the statutes are founded on natural affection of the heart, so as to let the estate of deceased persons follow the classes of heirs nearest in blood, with the two exceptions, in providing for the one-half blood and the estate of a deceased child which had come to it by one of its parents, and to sustain the contention of counsel for the defendant in error in the instant case would in effect interpolate into the statutes something never contemplated by the Legislature.

The case of Hill v. Hill, 58 Okla. 707, 160 Pac. 1116, relied on by counsel for the defendant in error, wherein the court construed section 8427, Rev. Laws 1910, and held that half brothers and sisters of the deceased allottee were precluded from inheriting as against brothers and sisters of the whole blood, for the reason the estate of the said deceased allottee was an ancestral estate, does somewhat, in principle, support their contention. But we are unwilling to apply the reasoning of that case to the 7th subdivision of the statute, and for the further reason that this court in the case of Jackson v. McKay, supra, held that the father of Elijah Roe inherited his allotment, following the rule announced in the case of In re Pigeon's Estate, supra.

For the reasons stated, the judgment of the trial court is reversed, and the judgment remanded, with directions to enter judgment for Edmond McKay.

JOHNSON, C. J., and NICHOLSON, COCHRAN, and MASON, JJ., concur.