### In re YAHOLA'S HEIRSHIP.
### JOHNSON et al. v. McGIRT et al.

No. 15783. Opinion Filed Jan. 14, 1930.

Rehearing Denied Feb. 11, 1930.

Warren, Miller & Crutcher, for plaintiffs in error.

W. T. Anglin, A. Sherman, J. W. Willmott, and R. J. Roberts, for defendants in error.

LESTER, V. C. J. This is an appeal from the district court of Hughes county, Okla., and there is but one question presented, to wit: Did the district court err in holding that Bella McGirt, a maternal half-sister of the allottee, Tommy Yahola, who died in the month of February, 1919, inherit the entire allotment of said Tommy Yahola, to the exclusion of Caesar Johnson and Louis Johnson, paternal cousins?

In the trial of the cause an agreed statement of facts was entered into, reciting:

"It is hereby stipulated and agreed by and between the parties hereto that Tommy Yahola was a duly enrolled Creek Indian, enrolled opposite roll No. 7376; and that as such he received as his allotment of the lands of the Creek Nation, the south half of the northeast quarter; and the northwest quarter of the southeast quarter of section 25, township 13 north, range 8 east, Okfuskee county; and the southwest quarter of the southeast quarter of section 18, township 8 north, range 12 east, Hughes county, and that Tommy Yahola departed this life while a resident of Hughes county, Okla., in the month of February, 1919, seized and possessed of the above described land; that at the time of his death, he left him surviving Bella McGirt, nee Watson, a maternal half-sister, and Caesar Johnson and Louis Johnson, paternal cousins; that the only question to be decided by the court in this case is whether or not the maternal half-sister took the entire estate by inheritance upon the death of said allottee, or whether the paternal cousins inherited a one-half interest in the estate by right of representation."

While it is not shown by the agreed statement of facts that Tommy Yahola was enrolled as a full-blood, however, it is admitted by the pleadings in the case that he was enrolled as a full-blood.

· Upon filing of the said agreed statement of facts the trial court rendered its judgment decreeing that Bella McGirt was entitled to the entire allotment of Tommy Yahola and to the exclusion of the paternal cousins, Caesar Johnson and Louis Johnson. From this judgment Caesar Johnson and Louis Johnson appeal.

In determining the question here involved there are but two provisions of the law of descent and distribution of the Statutes of Oklahoma to be construed, to wit:

(1) Subdivision 3 of section 11301, C. O. S. 1921, which provides:

"If there be no issue, nor husband, nor wife, nor father, nor mother, then in equal shares to the brothers and sisters of the decedent. * * *"

(2) Section 11310, C. O. S. 1921, which provides:

"Kindred of the half-blood inherit equally with those of the whole blood in the same degree, unless the inheritance come to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestors must be excluded from such inheritance."

Bella McGirt contends that under subdivision 3, as above quoted, she is entitled to the entire allotment of Tommy Yahola. Caesar Johnson and Louis Johnson contend that under section 11310, as above set forth, they are entitled to the undivided one-half interest in said allotment.

Bella McGirt claims on account of being a sister of half-blood of the allottee she inherits the entire estate as if she were of the whole blood, and that the only exception to the statute is where the estate comes to the intestate by descent, devise, or gift of some one of his ancestors, as provided in section 11310, supra, and that none of the ancestors of Tommy Yahola were ever in the ownership or possession of the allotment of said Tommy Yahola, and therefore the exception does not here exist.

In reviewing the question here presented, it must be admitted that there are conflicting decisions of this court. The cases of Hill v. Hill, 58 Okla. 707, 160 Pac. 1116, and Gray v. Chapman, 114 Okla. 66, 243 Pac. 522, hold that an individual allotment of a member of the Indian Tribe is an ancestral estate under the laws of descent and distribution of the Statutes of Oklahoma. The early cases holding that the individual allotment of members of the Indian Tribe partook of a nature of an ancestral estate were applied originally to the Arkansas laws of descent

and distribution. The case of McDougal v. McKay, 59 L. Ed. (U. S.) 1001, states:

"The pertinent sections of Mansfield's Digest are copied in the margin. They sharply distinguish between an estate which came to a decedent by a parent and a new acquisition, and prescribe different rules of inheritance."

Section 2531, Mansfield's Digest, Ark., provides:

"In cases where the intestate shall die without descendants, if the estate come by the father, then it shall ascend to the father and his heirs; if by the mother, the estate, or so much thereof as came by the mother, shall ascend to the mother and her heirs; but if the estate be a new acquisition it shall ascend to the father for his lifetime, and then descend, in remainder, to the collateral kindred of the intestate in the manner provided in this act; and, in default of a father, then to the mother, for her lifetime; then to descend to the collateral heirs as before provided."

In the case of McDougal v. McKay, supra, it is said:

"We recognize the unusual difficulties surrounding the problem presented upon the record, and appreciate the very forceful arguments offered in support of the conflicting theories. The circumstances are novel, and the canons of descent contained in Mansfield's Digest are not precisely applicable thereto; but these rules must be accommodated to the facts, and the great purpose of Congress effectuated as nearly as may be."

The only reference that is made by the statutes of Oklahoma referring to the acquirement of property by descent, devise, or gift to an intestate is section 11310, C. O. S. 1921, and that section makes it necessary before the kindred of half-blood is excluded in sharing with the whole blood that the inheritance must come to the intestate by descent, devise, or gift of some one of his ancestors.

This court, in the case of Jefferson v. Cook, 53 Okla. 272, 155 Pac. 852, said:

"While heretofore we may have indulged in fiction in construing the laws governing the devolution of Creek allotments, we have not gone so far as to hold that one can inherit from the living. And such we would do if we would here hold that this allottee, who received deeds to her allotment April 10, 1903, and filed them of record April 17, 1903, inherited any part of the land in controversy from her mother, who died June 9, 1905, or any part from her father, who is still living. And if we should so hold it might be difficult to say why the moiety thereof inherited from the mother should not

be chargeable with the payment of the mother's debts in the hands of her administrator.

"And there is nothing in the case of Shulthis v. McDougal, 170 Fed. 529, or any other case that we know of, which would justify such holding. It is contended that this case held Creek allotments to be ancestral estates, and that it follows that this allotment was derived by inheritance from the father and mother of Peggy Ann. Not so. To be sure the case holds the allotment to be birthright, and comes to the allottee by the blood of his or her tribal parent or parents, as the case may be; but that case far from holds that it comes thus by inheritance. but, on the contrary, does hold:

" 'The lands of the tribe fit into neither of the classes mentioned in the statute (reference being made to an ancestral estate and new acquisition). They did not come to a member of the tribe by inheritance from any ancestor, nor could they be spoken of with propriety as a purchase'."

See, also, the case of Crouthamel v. Welch et al., 53 Okla. 288, 156 Pac. 302.

In the case of McKay v. Roe, 96 Okla. 87, 219 Pac. 921, it is held that the individual allotment of a member of the Indian Tribe will not be treated as having come to such allottee by inheritance, and it is therein said by this court:

"It is obvious that this statute has no application to the devolution of the instant case, for the reason the estate in question is the individual allotment of the deceased allottee, and we cannot agree with the contention that in applying the Oklahoma law of descent and distribution, this kind of an allotment will be treated as having come to the allottee by inheritance for the reason that one of the parents of the deceased allottee belonged to the same tribe of Indians of which such deceased allottee was a member.

"The phrase, 'all of the estate that came to the deceased child by inheritance, from such decedent,' plainly means an estate of inheritance, that came from his father or deceased child by descent, gift or devise, and not by purchase.

" 'An ancestral estate ordinarily is realty which came to the intestate by descent or devise from a now dead ancestor or by deed of actual gift from a living one, there being no other consideration than that of blood. Nonancestral property is realty which came to the intestate in any other way.' Walker's Am. Law (10th Ed.) 392; Martin v. Martin, 98 Ark. 93 and 99, 135 S. W. 348; Brown v. Whaley, 58 Ohio St. 654 and 666, 49 N. E. 479, 65 Am. St. Rep. 793; 2 C. J. 1335. * * *

"In order for the 7th subdivision of the statute, supra, to be invoked as the applica-

ble statute, the allotment must have been derived from one of the parents of the deceased allottee, and the parent of the deceased allottee never having been seized of the allotment, it is obvious the statute has no application, but the estate is controlled by the 2nd subdivision of the section of the statute."

See, also, Teague et al. v. Smith et al., 85 Okla. 12, 204 Pac. 439; Harrison v. Harrison, 87 Okla. 91, 209 Pac. 737; Roe v. Anco Oil Co. et al., 96 Okla. 87, 219 Pac. 922.

In the case of Kunkel v. Barnett, 10 Fed. (2nd) 804, the court said:

"In the case of In re Pigeon, supra, the court held that the noncitizen heir, the surviving wife of the deceased allottee, was entitled to inherit his estate, his individual allotment, and overruled all former cases holding such estates to be ancestral. It would seem, from a consideration of these cases, following the rule announced in the Pigeon Case, that the doctrine of ancestral estates adheres to a fallacious construction of the Oklahoma statutes, and the creation of such estates may only exist by judicial interpolation into the statutes of something not to be found in the plain language of the various provisions of the Oklahoma statutes of descent and distribution.

" '* * * It is plain that no such necessity exists in the application of the Oklahoma statutes, and such a construction would, in effect, nullify the express provisions of the Oklahoma statute in the devolution of such estates as the individual allotments of the deceased members of the tribes."

In the case of Moffett et al. v. Conley et al., 63 Okla. 3, 163 Pac. 118, this court said:

" '* * * 'Descent,' or 'hereditary succession,' is the title whereby a man on the death of his ancestor acquires his estate by right of representation, as his heir at law. An 'heir,' therefore, is he upon whom the law casts the estate immediately upon the death of the ancestor; and an estate, so descending to the heir, is in law called the 'inheritance'."

Can it be said that one takes an inheritance of an estate during the lifetime of the possessor of said estate?

We think that where property would be cast upon a member of a certain class save and except for a definite exception made by statute, it is necessary that the facts justifying such exception must be specific and certain and not be merely analogous thereto, as pointed out in the case of Shulthis v. McDougal, 170 Fed. 529, wherein the court said, after quoting a part of section 2531, Mansfield's Digest:

"The lands of that tribe fit into neither of the classes mentioned in the statute. They

did not come to a member of the tribe by inheritance from any ancestor, nor could they be spoken of with propriety as a purchase. In applying the statute in this case, therefore, we shall have to proceed by analogy only."

The right to participate in the allotment of any one of the Five Civilized Tribes required an enrollment as a member of the particular tribe from which an allotment was sought. These enrollment lists contained a large number of persons who were either intermarried citizens, adopted citizens, or freedmen, and the larger number of these were wholly without Indian blood. Hence it is plainly evident that these classes did not obtain an allotment by reason of their birthright or on account of the blood of their ancestors.

In the case of Amy v. Amy, 12 Utah, 278, 42 Pac. 1121, referred to and approved by this court in the case of Thompson v. Smith, 102 Okla. 150, 227 Pac. 77, it is said:

"The word 'ancestor' as used in this connection is construed to mean the last possessor before the decedent; that is the person from whom the land immediately descends to the decedent."

Under the Oklahoma statutes, can it be said that the individual allotment came to Tommy Yahola by the descent of some one of his ancestors, when in fact they never were in the ownership or possession of the same? It was the birth, being, and existence of Tommy Yahola that caused the transfer of the land to be made to him in fee. Independent of the existence of Tommy Yahola his ancestors had allotted to them all of the land of the tribe to which they were entitled, and their land is not here involved.

The existence of Tommy Yahola brought this estate into being so far as it concerned the allottee and his kindred. The land in question did not come to the allottee by the descent of some one of his ancestors.

We hold that as between the maternal half-sister of the allottee, Tommy Yahola, and his paternal cousins, Caesar Johnson and Louis Johnson, the half-sister is entitled to the entire individual allotment of said Tommy Yahola, for the reason that it does not appear that the lands in question came to the intestate, Tommy Yahola, by descent, devise, or gift of some one of his ancestors; and the case of Hill v. Hill, supra, and the case of Gray v. Chapman, supra, are overruled so far as said cases hold that an individual allotment under the law of descent and distribution of Oklahoma should be cast

as if it came to an individual allottee by descent.

Judgment of the district court is affirmed.

MASON, C. J., and CLARK, HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur. RILEY, J., dissents. HUNT, J., not participating.