In the Matter of the ESTATE of Lucinda
ROBBS, a/k/a Babe Robbs, a/k/a
Salena C. Robbs, Deceased.

Hotona SLACK et al., Appellees,

v.

Charles F. HOWARD, Administrator of the
Estate of C. P. Howard, Deceased,
et al., Appellants.

No. 44044.

Supreme Court of Oklahoma.

Dec. 12, 1972.

Rehearing Denied Jan. 8, 1973.

Alpheus Varner, Poteau, for appellees.

Kay Wilson, Jr., Muskogee, for appellants.

WILLIAMS, Justice.

This appeal presents a question of statutory interpretation in a factual setting never considered by this Court before. It involves the general scheme of descent and distribution found in our statutes of intestate succession.

The question is whether the exception following the word "unless" in our half blood statute, 84 O.S.1971, § 222, is applicable only when the half blood kindred and whole blood kindred are related to decedent in the same degree, or whether it operates to disinherit nearer half blood kindred *not* of the blood of the ancestor in favor of more remote whole blood kindred of the decedent who *are* of the blood of the ancestor.

§ 222 provides as follows:

"Kindred of the half-blood inherit equally with those of the whole blood *in the same degree,* unless the inheritance come to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestors must be excluded from such inheritance." (Emphasis added).

The decedent in this case was Lucinda Robbs. She died unmarried and without issue, father, mother, or full brothers or sisters. Her surviving kindred are a maternal half brother and the children of some maternal half brothers and maternal half sisters, on the one hand, and some paternal cousins on the other. The contest is between these two sets of rival claimants. A substantial portion of her estate, and the only portion involved in this appeal, consisted of real estate devised to her by a paternal uncle. It is agreed that an uncle is within the broad definition accorded the word "ancestors" in our half blood statute.

The county court decreed that the paternal ancestral estate descended to the half blood maternal kindred of decedent (her kindred of the 2nd and 3rd degrees; see 84 O.S.1971, § 221); the district court decreed that it descended to the paternal

cousins (decedent's kindred of the 4th degree).

It is said that the rule of the common law excluding the half blood from an inheritance has never met with favor in the United States, and that *even in the absence of a statute such as our § 222,* "the half blood is usually held to take equally with the whole blood, such rule being based either on the intent of the legislature as gathered from the other sections of the statutes of descent, or on the theory that the common-law rule was founded on the feudal law and is *not applicable to our institutions*". 141 A.L.R. 977. This is the case in Oklahoma. In 1924, in Thompson v. Smith, 102 Okl. 150, 227 P. 77, this Court said:

"* * * where the statute refers to brothers and sisters of the decedent, the same is held to include one-half brothers and one-half sisters in determining the right to inherit. * * * Therefore it is plain that, instead of [§ 222] being an enabling statute, it must be construed to be a qualification of the general rule in the preceding section [now 84 O.S.1971, § 213]."

Many of the other states of this country have half blood statutes that are identical, or almost identical, with our § 222. Under the varying constructions of these statutes, two divergent lines of authority have emerged on the question of whether the statutes operate to disinherit the decedent's nearer kindred of the half blood not of the blood of the ancestor in favor of decedent's more remote kindred of the whole blood who are of the blood of the ancestor. See annotation at 141 A.L.R. 977. Although in that annotation, published in 1942, Oklahoma is listed among those states in which the decedent's nearer half blood kindred not of the blood are excluded in favor of decedent's more remote kindred of the whole blood who are of the blood of the ancestor (page 998), it is perhaps significant that the annotator deemed it advisable to discuss the Oklahoma decisions in a separate category (page 1006).

The reason may lie in the fact that in this state, the construction of our half blood statute has often come in cases also involving another vexing question: whether Indian allotments should be considered ancestral estates (estate of inheritance) or non-ancestral in origin. In 1913, in Pigeon et al. v. Buck et al., 38 Okl. 101, 131 P. 1083; 237 U.S. 386, 35 S.Ct. 608, 59 L.Ed. 1007, this Court took the position that Indian allotments were ancestral estates within the meaning of certain sections of Mansfield's Digest of the Laws of Arkansas (not the half blood section of that digest). In *Pigeon,* the Indian intestate died in 1905, and the devolution of her estate was controlled by the provisions of Arkansas law found in Chapter 49 of Mansfield's Digest, which had been placed in force in Indian Territory by act of Congress. No "half blood" question was presented in *Pigeon.*

Three years later, in Hill v. Hill, 58 Okl. 707, 160 P. 1116, this Court for the first time considered § 222. The rival claimants in that case were brothers and sisters of the whole blood, on the one hand, and a half brother and a half sister, on the other. The land concerned was an Indian allotment, the allottee having died in 1913. The controlling rule of descent was the one now codified as 84 O.S.1971, § 213 Third, modified, however, by § 222 if the Indian allotment were considered to be an ancestral estate. The majority, considering that question no longer open because of the holding in Pigeon, which in the meantime had been affirmed in the United States Supreme Court, held that the allotment was an ancestral estate within the meaning of § 222 and descended to the decedent's brothers and sisters of the whole blood to the exclusion of decedent's half brother and half sister, who were not of the blood of the decedent's mother (his father being "a noncitizen of the Choctaw Nation"). In a lengthy dissent, Justice Sharp pointed out, among other things, that different statutes were involved in *Pigeon and Hill,* and that the Arkansas statutes in *Pigeon* which justified resort to the

fiction that Indian allotments are estates of inheritance had no counterpart in Oklahoma. In 1930, in the face of intervening conflicting decisions on the question, this Court abandoned the doctrine that Indian allotments are ancestral estates and specifically overruled the *Hill* holding on that question. See In re Yahola's Estate, 142 Okl. 79, 285 P. 946.

In the meantime, however, in Thompson v. Smith, 102 Okl. 150, 227 P. 77, which also involved an Indian allotment, this Court had examined the two divergent lines of authority on the interpretation of half blood statutes in the jurisdictions of this country.

For convenience we will refer to the conflicting conclusions reached as the California rule and the Arkansas rule. In *Thompson,* this Court quite specifically rejected the California rule and adopted the Arkansas rule, holding with regard to § 222 that "said section qualifies the general rule as to inheritance by those of the half blood found in [84 O.S.1971, § 213 Second] and the half blood is excluded from an inheritance that came to the deceased by descent, devise or gift of some one of his ancestors, and that the rule in Kelly v. McGuire, 15 Ark. [555] 586, be followed." In *Kelly,* the Arkansas Court had held, in 1854, that under the Arkansas version of the half blood statute, "where the inheritance is in any one line, if there goes in succession * * * precisely as if the other line was extinct, and precisely as the inheritance of a bastard would take a course in his mother's line, he having no father's line at all." Under this construction of the half blood statute, decedent's half blood kindred not of the blood of the ancestor were totally disinherited in favor of decedent's kindred of the whole blood who were of the blood of the ancestor, regardless of whether they were related to decedent "in the same degree."

The California rule which was examined and rejected by this Court in *Thompson* was apparently first stated by the California court in In re Smith's Estate, 131 Cal.

433, 63 P. 729. In that case, in 1901, the court held in effect that the California half blood statute, identical with our § 222, was applicable only in situations where the half blood kindred and whole blood kindred were related to decedent "in the same degree", in which case the half blood kindred not of the blood of the ancestor would be excluded from inheriting the ancestral property. Under that construction, the half blood statute would not operate to disinherit nearer half blood kindred in favor of whole blood kindred in a more remote degree. For a more recent exposition of the California rule, see In re Ryan's Estate, 21 Cal. 498, 133 P.2d 626.

In view of the unequivocal language of this Court in *Thompson,* which was later reaffirmed in In re Long's Estate, 180 Okl. 28, 67 P.2d 41, 110 A.L.R. 1002, it must be said that in the case now before us the trial court and the Court of Appeals respectively were justified in rendering and affirming judgment in favor of decedent's more remote kindred of the whole blood (the paternal cousins) and in excluding the nearer kindred of the half blood.

Nevertheless, upon careful consideration, and for the reasons set out below, we have concluded that this Court erred in *Thompson* in rejecting the California rule and adopting the Arkansas rule.

1. Perhaps the principal reason for rejecting the rule set out in In re Smith's Estate, 131 Cal. 433, 63 P. 729, was stated by this Court as follows in *Thompson:*

> "In the case of In re Smith's Estate, supra, the conclusion reached was upon the theory that such statutes as [§ 222] are regarded as enabling laws conferring upon kindred of the one-half blood a right of inheritance not theretofore enjoyed equally with those of the whole blood."

■ This was not correct. This Court obviously overlooked the following language in In re Smith: "Hence the provision [the California half blood statute] has no application as between kindred in dif-

ferent degrees, but the relative claims of these [the half blood kindred] are determined exclusively by the provisions of section 1386 of the Civil Code, where the term 'brothers and sisters,' and other terms denoting kindred of various degrees, are used in their proper sense, and 'according to the approved usage of the language' * * * *must be held to include those of the half as well as of the whole blood"* (emphasis added). To the same effect, see Lynch v. Lynch, 132 Cal. 214, 64 P. 284, decided two months after *Smith,* in which the California court said " * * * where the term 'brothers' or 'sisters' is used without limitation it includes half-brothers and half-sisters." Thus, the general rule in California as in Oklahoma is that kindred of the half blood inherit under the general statutes of descent, and the respective half blood statutes cannot be said to confer a right of inheritance "not theretofore enjoyed."

2. In *Thompson,* this Court said that our half blood statute " * * * is also identical in material parts to section 2533 of Mansfield's Digest of the Laws of Arkansas." Again, this is not correct. That section, the Arkansas half blood statute, now codified without change as Ark.Stats. 1947, § 61–112, is as follows:

> "Relations of the half-blood shall inherit equally with those of the whole blood in the same degree; *and the descendants of such relatives shall inherit in the same manner as the descendants of the whole blood,* unless the inheritance come to the intestate by descent, devise, or gift, of some one of his ancestors, in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance." (Emphasis added).

Of course the portion emphasized above is not found in our § 222. Considering the grammatical construction of the Arkansas half blood statute only, the exception following the word "unless" applies only to *descendants* of the half blood relations, and

not the half blood relations themselves (although it has not been so construed by the Arkansas courts). It may be noted in passing that the difficult problems confronting Arkansas courts in the construction of Arkansas statutes of descent are compounded by the next section (§ 61–113) which provides, among other things, that in all cases not covered by the statutes, descent shall be "according to the course of the common law". This section has no counterpart in Oklahoma statutes.

Since (1) the California rule stated in *Smith* was based upon a statute identical with our § 222, which cannot be distinguished upon the basis that the California half blood statute is an enabling law and ours is not as this Court mistakenly indicated in *Thompson*; and (2) since the Arkansas statute construed in *Kelly* was not, as this Court also indicated in *Thompson,* "identical in material parts" with our § 222; and (3) since this Court's decisions construing our half blood statute were perhaps unduly influenced by the Indian allotments question which was usually presented in the same cases (there being more reason to preserve the Indian allotment in the Indian blood line); we are forced to the conclusion that our holding in *Thompson* rejecting the California rule and adopting the Arkansas rule was erroneous.

 We therefore hold that our half blood statute, 84 O.S.1971, § 222, is applicable only when the surviving half blood kindred and whole blood kindred are related to decedent in the same degree, and that it does not operate to disinherit nearer half blood kindred not of the blood of the ancestor in favor of more remote whole blood kindred who are of the blood of the ancestor.

This Court has discussed or considered § 222 in sixteen cases (one was a dissenting opinion separately published). See Shepard's Oklahoma Citations. Because of the differing factual situations, no useful purpose would be served by discussing them in detail here. We note that of all of the

sixteen cases, only in *Thompson,* would the result have been different under the rule we adopt today. (There the surviving half brother would not have been excluded). Not even in *Thompson* can it be said that a more remote relative of the whole blood was favored over a nearer half blood relative of the decedent, because in that case the prevailing heir, under 84 O.S.1971, § 213 Second, was the surviving husband of decedent. He inherited because of the provisions of § 213 Second, and not because he was of the blood of the ancestor and the excluded half brother was not.

In this connection it may be noted that in the last case in which this Court considered § 222, DeRoin v. Whitetail, Okl., 312 P.2d 967, the half brother who was excluded by the trial court's judgment did not appeal, and the precise question here involved was not presented in that case.

The opinion of the Court of Appeals is vacated; the judgment of the District Court of Muskogee County is reversed and the cause is remanded to the trial court with directions to enter judgment in accordance with the views herein expressed.

BERRY, C. J., and IRWIN, LAVENDER, BARNES and SIMMS, JJ., concur.

DAVISON, V. C. J., and JACKSON and HODGES, JJ., dissent.

JACKSON, Justice (dissenting).

The difficulty I have in interpreting 84 O.S.1971, § 222, stems from its arrangement and substance. It is a one-sentence section and deals with two kinds of kindred and two different sources of an estate. In addition, as sometimes occurs, we find ourselves interpreting former decisions of this court as distinguished from interpreting the statute. Section 222, with numerals added, provides as follows:

(1) "Kindred of the half-blood inherit equally with those of the whole blood in the same degree, (2) unless the inheritance come to the intestate by descent,

devise or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestors must be excluded from such inheritance."

That part of the sentence identified as number (2) constitutes an exception to provision number (1) so that if we make a new sentence out of provision number (2) it would provide substantially as follows:

"*If* the inheritance come to the intestate by descent, devise or gift of some one of his ancestors, all those who are not of the blood of such ancestors must be excluded from such inheritance."

In the instant case Lucinda Robbs died intestate leaving an estate consisting of personal and real property. The real estate was devised to her by her paternal uncle, William Wallace Robbs. Thus under the exception, identified here as number (2), Lucinda Robbs' real estate which was devised to her by her paternal uncle, William Wallace Robbs, will descend exclusively to Lucinda's heirs who are of the blood of her paternal uncle, William Wallace Robbs. Lucinda's personal property, which I assume was acquired by her own industry, would descend as provided in the first part of Section 222. That is, "Kindred of the half-blood inherit equally with those of the whole blood in the same degree." This can only mean that her nearest of kin will inherit the property acquired by her own industry whether of half-blood or whole-blood, pursuant to the provisions of 84 O.S.1971, § 213.

I believe the conclusion I have reached is in harmony with earlier decisions of this court as expressed in Thompson v. Smith, 102 Okl. 150, 227 P. 77, and in In re Long's Estate, 180 Okl. 28, 67 P.2d 41.

Former decisions of this court and the history of Section 222 are thoroughly discussed by Albert R. Matthews (now of Muskogee, Oklahoma) in 13 Oklahoma Law Review 440–445. He appears to be of the view of that the doctrine of ancestral property should be abolished by the Legislature. I agree that the problem should be reviewed by our Legislature.

I would deny certiorari and thus affirm the judgment of the trial court and the decision of the Court of Appeals.

I am authorized to say that DAVISON, V. C. J., and HODGES, J., concur in the views herein expressed.