### DAILEY et al. v. BENN et al.

No. 9646—Opinion Filed May 10, 1921.

(Syllabus.)

**1. Indians—Descent of Allotment—Seminole Freedmen.**

William Bowlegs, a Seminole freedman, died intestate on the 30th day of June, 1902, without descendants, after having received his allotment. He left, surviving him, his widow. The father and mother of the deceased were dead at the time of the death of the intestate. They were Seminole freedmen. Held, that the devolution of the allotment of William Bowlegs is governed by the applicable provisions of chapter 49, Mansf. Dig. Laws of Ark. Held, further, that the said William Bowlegs acquired the right to his allotment by his membership in the Seminole Tribe of Indians; that the father and mother being Seminole freedmen, his allotment came to him through the blood of both parents, and as much through the blood of one as the other; that by virtue of that part of section 2531 of said chapter 49, which provides: "In cases where the intestate shall die without descendants, if the estate came by the father, then it shall ascend to the father and his heirs; if by the mother, the estate, or as much thereof as came by the mother, shall ascend to the mother and her heirs"—said allotment ascended equally to the father and mother of said decedent and to their heirs, who were citizens of the Seminole Tribe of Indians.

**2. Dower—Nature of Estate—Right to Convey.**

The law in this jurisdiction seems to be well settled that the widow's right to dower, prior to assignment, is not an estate in the lands of her deceased husband, but is rather in the nature of a mere chose in action, and cannot be assigned to a person not vested with the fee, and a conveyance of dower to a stranger to the title, prior to having the same assigned, confers no rights enforceable at law; but she may by deed release her dower interest after the death of her husband to the heirs or others in privity with them.

**3. Descent and Distribution—Relations of the Half-Blood—Arkansas Statutes.**

Under and by virtue of section 2533, Mansf. Dig. of the Statutes of Arkansas, relations of the half-blood shall inherit equally with those of the whole blood in the same degree; and the descendants of such relatives shall inherit in the same manner as the descendants of the whole blood, unless the inheritance come to the intestate by descent, devise, or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance.

Error from District Court, Seminole County; C. Guy Cutlip, Special Judge.

Action in ejectment by Margaret R. Benn against Louisa Daily and others; J. D. Lydick and others intervening. Judgment for plaintiff and J. D. Lydick and others, and defendant Daily and others bring error. Affirmed.

J. A. Baker, for plaintiffs in error.

Davis & Patterson and Mark Goode, for defendants in error.

PITCHFORD, J. This is an appeal from the district court of Seminole county, Oklahoma; the subject-matter being the title to 40 acres of land in said county, being the allotment of one William Bowlegs, a Seminole freedman.

The brief filed by plaintiffs in error contains the following stipulations:

"To avoid making this case-made unnecessarily long and tedious by incorporating in the same the evidence produced on the trial of the same in the district court and the rulings thereon by the court, we, the undersigned attorneys in said case, agree that no substantial good is to be accomplished by so incorporating the evidence, and that the findings of fact as made by the trial judge, the Hon. C. Guy Cutlip, are true and correct, and that the findings of fact made by him express the truth of the case."

The findings of fact by the trial court are substantially as follows: That William Bowlegs, the allottee, died intestate in the year of 1902, leaving, surviving him, his widow, Louisa Dailey, one of the plaintiffs in error. The deceased had no children or descendants of children. The father of the deceased was John Bowlegs, and his mother was Bess Bowlegs, both of whom were Seminole freedmen, and were dead at the time of the death of William Bowlegs. John Bowlegs, the father, left, surviving him, certain of his brothers and sisters and their descendants. Bess Bowlegs, the mother, died, leaving, surviving her, as her heirs at law, her brother, Freeman, and Betsy Ann, her sister. Pompey, the father of Bess, after the death of her mother, intermarried with one Hester, and was the father, by Hester, of a number of children.

It was further found by the court that on the 9th day of October, 1905, certain of the heirs interested in the allotment of the deceased, William Bowlegs, conveyed said land by warranty deed to J. W. Bolen, and that by mesne conveyance the interest of the grantors passed to defendant in error J. W. Lydick; that Polly Cyrus, a sister of

John Bowlegs, had conveyed all of her interest to N. B. Smith, and that Smith afterwards sold to Lydick; that Louisa Dailey, on the 28th day of June, 1906, executed to H. T. King and J. S. Barham her warranty deed to said land, and that King and Barham sold to Lydick, and J. D. Lydick conveyed a part of his interest in the land to Margaret R. Benn.

The court, after setting forth the interest of the various heirs in the estate, concluded that J. D. Lydick and Margaret R. Benn were the owners of the dower interest of Louisa Dailey, the widow, and that in equity this interest should be assigned to them, and that by purchase of the interests of a number of the heirs they were also entitled to a twenty-three forty-eighths interest in and to the remainder of the land; that, upon the death of William Bowlegs, his allotment descended one-half to the descendants of John Bowlegs, his father, and one-half to the descendants of Bess Bowlegs, his mother, and that, upon the death of Bess Bowlegs, her estate went to the heirs of her father, Pompey; that is, to her full brother and sister, Freeman and Betsey Ann, and her half brothers and sisters, the children of her father Pompey, by Hester.

On appeal, the plaintiffs in error argue three propositions: The first being that the dower interests of the widow, Louisa Dailey, in the allotment of her deceased husband were not assignable, except to the heirs, the remaindermen, or the owner of the fee; that the defendants in error secured no rights by reason of the deed executed by Louisa Dailey; second, that, if it should be held that Louisa Dailey by her deed did convey her dower interest, this interest should not go to the purchasers alone, but that it would inure to the benefit of all the joint tenants by each paying his or her pro rata part of the purchase money of such interest, on the theory that one joint tenant purchasing an encumbrance upon the common property, this purchase inures to the benefit of all the joint tenants; and, third, that, upon the death of William Bowlegs, one-half of his estate descended to the heirs of his mother, Bess Bowlegs, and that the portion going to Bess Bowlegs would descend, one-half to the heirs of her mother, who would be Freedman and Betsey Ann, and the other one-half to the heirs of her father, Pompey; and, further, that, as Freeman and Betsey Ann were the children of Pompey, they would be entitled not only to the one-half of Bess' interest, but would also be entitled, in addition thereto, to share in the one-half interest going to the heirs of the father of Bess; that they were as much entitled to share in the distribution of their father's

estate as were their half brothers and sisters, who were the children of Hester.

The law in this jurisdiction appears to be well settled that the widow's right of dower, prior to assignment, is not an estate in the lands of her deceased husband, but is rather in the nature of a mere chose in action, and cannot be assigned to a person not vested with the fee, and that a conveyance of dower to a stranger to the title, prior to having the same assigned, confers no right enforceable at law.

By virtue of the stipulations, supra, we have no means of ascertaining from the evidence whether or not defendants in error were justified in claiming the entire interest of the heirs in the land at the time the deed was executed by the widow. We find in the pleadings, however, that the claim was made by the defendants in error to the entire interest. If the interest of all the heirs had been purchased, then the defendants in error would have owned the whole fee and there would then be no question as to the power of the widow to transfer her dower interest to them prior to having the same assigned. The court found that there were other heirs whose interests had not been sold to the defendants. Therefore, we are confronted with this proposition: if a portion of the heirs transfer their interests, does this constitute the purchaser of these various interests such a holder of the legal title as to make effective the conveyance of the dower interest of the widow to such purchaser? We are of the opinion that it does. At the time Louisa Dailey executed the deed, her grantee was not a stranger to the title.

In the case of Beauchamp v. Bertig et al., 90 Ark. 351, 119 S. W. 75, the widow entitled to an unassigned dower interest joined with certain infants owning the balance of the fee in executing a deed to the land; the infants thereafter disaffirmed their act. It was there held that the deed was effective to pass the widow's dower interest.

The rule is stated in Rodgers on Domestic Relations, page 360, sec. 410, as follows:

"And she may release her dower interest after death of her husband to the heirs or other in privity with them by deed so as to release same to them, though she could not, ordinarily, convey her dower interest before her assignment."

In the case of Dobberstein v. Murphy et al. (Minn.) 47 N. W. 171, it is said:

"A quitclaim deed to the heirs by a widow, when, by the law of the state, she was entitled to dower in the lands of her deceased husband, if it could not operate as a conveyance, did operate as a release of the dower right."

In the case last quoted from, it was held to be immaterial as to whether or not the deed of the widow to her dower passed title or merely extinguished the right, and the court refused to pass squarely on the question, but in the body of the opinion, on page 172, says:

"Whether or not the widow's dower, not being set off, was, at the time she executed the quitclaim deed to her daughters, assignable so that she could convey it, there is no question that she could release it. And her deed operated either as a conveyance or as a release. In which way it took effect is immaterial in this action, for it left the widow no claim upon the land."

The next contention of plaintiffs in error is that, if the deed executed by Louisa Dailey had the effect of extinguishing her dower interest, the purchase of this interest would inure to the benefit of all the heirs interested in estate. It is conceded, however, that each heir should pay his or her proportion or share of amount expended in purchasing this interest. There is nothing contained in any of the pleadings indicating a contention of this nature on the part of any of the plaintiffs in error in the trial court. The point stressed particularly by plaintiffs in error's brief is in reference to the dower interest of Louisa Dailey.

In the conclusions of law, by the trial court, holding that the defendants in error were the owners of the dower interest of Louisa Dailey, and that in equity this interest should be assigned to them, none excepted to this finding except Louisa Dailey. In fact, there was no specific exception to any of the conclusions of law by the trial court, except those made by Louisa Dailey, and she excepted specifically to each finding. There is, however, a general exception in the following language:

"To each and every foregoing conclusion of law Louisa Dailey and all the defendants and interveners represented by J. A. Baker except, and which exceptions are allowed by the court, and likewise the intervener, J. D. Lydick, excepts to each and every of the foregoing conclusions of law and his exceptions are allowed by the court."

The plaintiffs in error have cited a long line of authorities to the effect that where a cotenant purchases an incumbrance, lien, or outstanding title, each purchase inures to the joint benefit of the cotenants. This is true in regard to liens and incumbrances, but the right of the nonpurchasing cotenants to share in the benefit of the purchase is dependent on their election, within a reasonable time, to bear their proportion of the expenses incurred in said purchase. 38 Cyc. 46.

We have seen in Beauchamp v. Bertig, supra, that the dower interest passes to the purchaser, notwithstanding the deed executed by the minor heirs was disaffirmed.

In Eakins v. Eakins (Ky. App.) 65 S. W. 811, it was said:

"Where a widow united with a part of the heirs in selling land allotted to her as dower, the other heirs had no right to interfere with the purchaser during the widow's lifetime."

The third contention of plaintiffs in error is that, one-half of the estate descending to his mother, Bess Bowlegs, the interest going to Bess should be divided, one-half to the heirs of the mother, and the other half to the heirs of her father. The trial court held that this interest went to the heirs of the father of Bess. In support of this contention, we are cited to the case of Thorn v. Cone, 47 Okla. 781, 150 Pac. 701. The question there before the court was whether or not the father and mother of a Seminole allottee, both of whom were Seminole citizens, would be entitled to inherit equally in the estate of their deceased child. The facts in that case were as follows: Sissie and Lena Jefferson, full-blooded Seminole Indians, died intestate, without descendants, after having received their allotments, on the 12th day of February, 1903, and the 20th day of July, 1904, respectively. The court held that the devolution of their allotments was governed by the applicable provisions of chapter 49, Mansf. Dig. Laws of Ark. And held, futher, that said decedents acquired the right to their allotments by their membership in the Seminole Tribe of Indians; that, their father and mother being full-blood Seminole Indians, their allotments came to them through the blood of their tribal parents, and as much through the blood of one as the other; and, upon their death without descendants, their allotments ascended equally to the father and his heirs, and the mother and her heirs.

We are again confronted with the stipulations above referred to. We have no means of reviewing the evidence heard by the trial court. The court found that the father and mother of William Bowlegs were Seminole freedmen, and evidently there must have been some evidence to justify the court in awarding the interest of Bess Bowlegs to the heirs of her father; he must have found that they were Seminole citizens and entitled to share in this interest. If the mother of Bess Bowlegs was not a Seminole, then no interest would go to her heirs.

In McDougal v. McKay et al., 237 U. S. 372, one of the parents of the deceased allottee, whose estate was in controversy, was a noncitizen of the Creek Tribe of Indians,

and the court held that, since no right in the Creek tribal estate came from the noncitizen parent, none would go back to the noncitizen parent by inheritance. The same rule would apply in this case.

Section 2533, Mansf. Dig. Laws of Ark., provides that:

"Relations of the half-blood shall inherit equally with those of the whole blood in the same degree; and the descendants of such relatives shall inherit in the same manner as the descendants of the whole blood, unless the inheritance come to the intestate by descent, devise, or gift, of some one of his ancestors, in which case all those who are not of the blood of such ancestors shall be excluded from such inheritance."

We conclude that the judgment of the trial court should be affirmed, and it is so ordered.

HARRISON, C. J., and McNEILL, ELTING, and NICHOLSON, JJ., concur.