## GRAY v. CHAPMAN et al.,

No. 11771—Opinion Filed Jan. 19, 1926.

[Reprinted Because of Error in Printing in 114 Okla. 68.]

(Syllabus.).

**1. Descent and Distribution—Estate Inherited by Decedent—Inheritance by Those of of Half Blood—Statute.**

When one dies possessed of an estate inherited from some one of his ancestors under section 8427, Revised Laws of Oklahoma 1910 (section 11310, C. O. S. 1921), the kindred of the half-blood who are not of the blood of the ancestor from whom the deceased inherited cannot inherit.

**2. Same—Indians—"Descent, Devise, or Gift of Ancestor"—Construction.**

A descent from an ancestor to an heir cannot be construed to mean a descent through and not from an ancestor. So a gift or devise from an ancestor must be construed to mean a gift or devise by the act of that ancestor, and not by that of some other ancestor more remote, passing through the immediate ancestors. Held, when Pharo Fulsome died possessed of an estate inherited from his mother, Sina Fulsome, she was the ancestor from whom Pharo Fulsome inherited, although that estate or part of it may have been inherited by her from a remote ancestor: therefore Frank Fulsome is excluded from inheriting, since he is not of the blood of Sina Fulsome, the ancestors from whom Pharo Fulsome inherited.

**3. Descent and Distribution—"Ancestral or Nonancestral Estates."**

In this jurisdiction estates are either ancestral or nonancestral. An "ancestral estate" is one acquired either by descent or by operation of law. A "nonancestral estate" is one acquired by purchase or by the act or the agreement of the parties. The source or origin of an estate must be first ascertained before its nature or character can be decided, then the law of descent and distribution applied to it.

**4. Indians—Allotment to Member of Five Civilized Tribes as Ancestral Estate.**

An allotment of land to a member of the Five Civilized Tribes by blood cannot be termed a nonancestral estate nor a gift, but must be termed an inheritance acquired by the allottee by reason of his membership in the tribe. It was his birthright. It came to him by the blood of his tribal parents, and not by purchase. It cannot be said that it was given to him by some one from whom he could not inherit by operation of law.

**5. Same—Descent of Allotment.**

An allottee, dying possessed of an allotment of land being an ancestral estate, leaving as his only heirs a maternal grandmother and paternal half-brother, held, that said allotment goes to them in equal shares.

Nicholson, C. J., dissenting.

Appeal from District Court, Pontotoc County; J. W. Bolen, Judge.

Action by Jane Gray against J. C. Chapman and another. From judgment for defendants, plaintiff appeals. Reversed and remanded, with directions.

R. H. Couch, J. B. Dudley. and Reuben M. Roddie, for plaintiff in error.

Robert. Wimbish and W. C. Duncan, for defendants in error.

HUNT, J. This is an appeal from a judgment of the district court of Pontotoc county rendered in favor of the defendants in error quieting title to certain lands situated in said county. The parties appear here as they appeared in the trial court. The case was tried upon an agreed statement of facts. The material facts necessary to be considered in determining the questions presented by this appeal are:

Sampson Johnson, a duly enrolled Chickasaw Indian, roll No. 445, died intestate on December 24, 1905, and left surviving him Jane Johnson, his wife, now Jane Gray, the plaintiff herein, and Sina Johnson, his daughter, subsequently Sina Fulsome. On the date of the death of Sampson Johnson he was seized of. a fee-simple title to 350 acres of

land, which he had received as his allotment. Said allotment was inherited by Sina Fulsome. his daughter and only heir, subject to the dower of Jane Johnson under chapter 49, Mansfield's Digest of the Laws of Arkansas, which were in force in the Indian Territory on said date. Some time in the year 1910 Sina Fulsome died intestate in Pontotoc county, Okla., and left surviving her as her sole and only heir at law her child, Pharo Fulsome, who was an enrolled Chickasaw Indian. Sina Fulsome left no husband or other child or descendant of a child. Sina Fulsome and Pharo Fulsome each received an allotment of land during their lifetime, and on the date of the death of Sina Fulsome she was seized and possessed of the lands which she had inherited from her father, Sampson Johnson, together with her own allotment. Pharo Fulsome died intestate on the tenth day of October, 1917, unmarried and without issue. leaving surviving him neither father nor mother nor brother nor sister, save and except a half-brother on his father's side, Frank Fulsome by name, who was a duly enrolled member of the Chickasaw Tribe of Indians. Eli Fulsome, an enrolled Chickasaw Indian. was the father of Pharo and Frank Fulsome. He died in the year 1909, prior to the death of Sina Fulsome. mother of Pharo. The mother of Frank Fulsome was Acey Fulsome, nee Anderson. Jane Gray, the plaintiff herein, was the grandmother of Pharo Fulsome on his mother's side; she being the mother of Sina Fulsome, the mother of Pharo Fulsome as above set out.

The defendants in this case, J. C. Chapman and William Elliott, asserted title to the lands involved herein under a warranty deed executed by Frank Fulsome, the other defendant, which deed had been approved by the county court of Pontotoc county. The allotments involved in the action are those of Sampson Johnson, Sina Fulsome. nee Johnson. and Pharo Fulsome, all deceased as herein set out. The judgment of the trial court was in favor of the defendants. in which it was decreed that Jane Gray, nee Johnson, grandmother of Pharo Fulsome, inherited no part of the allotment of Sampson Johnson which had been inherited by Sina Fulsome. his child, and on her death inherited by her child, Pharo Fulsome, nor any part of the allotment of Sina Fulsome—all of which the court held, together with Pharo Fulsome's allotment, was inherited by Pharo Fulsome's half-brother, Frank Fulsome, who, it is conceded, was not of the blood of the deceased allottees, Sampson Johnson or Sina Fulsome,

nee Johnson, and it is from this judgment this appeal is prosecuted.

This case involves a construction of section 8427, Rev. Laws of Okla. 1910, being section 11310, C. O. S. 1921, which is as follows:

"Kindred of the half-blood inherit equally with those of the whole blood in the same degree, unless the inheritance come to the intestate by descent, devise or gift of some one of his ancestors. in which case all those who are not of the blood of such ancestors must be excluded from such inheritance."

This section of our statute was construed in the case of Thompson et al. v. Smith et al., 102 Okla. 150, 227 P. 77, wherein this court adopted the rule that, where the estate had come to deceased by descent, devise, or gift of some one of his ancestors, only those of the blood of the ancestor from whom the estate was inherited could inherit; that is to say, those of the half-blood who were not of the blood of such ancestor must be excluded from such inheritance. Under this rule the half-blood are not excluded from inheriting, even though the estate is ancestral, provided they can show that they are of the blood of the ancestor from whom the estate was transmitted to the intestate. At the death of Sampson Johnson, Sina Fulsome became the owner and possessed of the fee-simple title of the estate of Sampson Johnson, subject only to the dower interest held by his widow, Jane Johnson, now Jane Gray. So at the death of Sina Fulsome she was possessed of an estate which she had inherited from her father, together with her own allotment, all of which passed to Pharo Fulsome, who thus became the fee-simple owner and possessed of all the property inherited from his mother. Sina Fulsome, subject only to the dower of Jane Johnson, as hereinbefore set out. There being more than one devolution in this case, it is necessary to determine who the ancestor of Pharo Fulsome was from whom he inherited this estate.

Before the adoption of the common law of England, it was necessary for one claiming an interest in an estate to establish the fact of seisin of the last possessor from whom he claimed as heir, and that he was of the blood of the first feudal lord. The common law has substituted ownership or title for the seisin, and established the immediate ancestor as the first purchaser. This rule has been liberalized by the various statutes of the various states of the Union, and the uniform construction given to these statutes is that the courts must look only to the proximate or the immediate ancestor. By de-

scent or hereditary succession, it is understood the title whereby a person upon the death of his ancestor acquires the estate of the latter as his heir at law. Therefore Sina Fulsome was the ancestor from whom Pharo Fulsome inherited these lands. Kelly's Heirs et al. v. McGuire et al., 15 Ark. 555; Kean v. Roe, 2 Har. (Del.) 103, 29 Am. Dec. 336; Deloney v. Walker, 9 Port. (Ala.) 497; Hillhouse v. Chester, 3 Day (Conn.) 166, 3 Am. Dec. 265; 27 A. & E. Ency. of Law (2d Ed.) pp. 298-300.

Since Sina Fulsome was the ancestor from whom Pharo Fulsome inherited these lands, Frank Fulsome, not being of the blood of Sina Fulsome, is therefore excluded from such inheritance. and the plaintiff herein, Jane Gray, formerly Jane Johnson, being of the blood of the ancestor from whom Pharo Fulsome inherited, must of necessity inherit the lands of Sampson Johnson and Sina Fulsome, and we so hold. Hill et al. v. Hill et al. 58 Okla. 707, 160 P. 1116; Thompson et al. v. Smith et al., supra, and authorities cited therein. This disposes of the lands inherited by Pharo Fulsome from his mother, Sina Fulsome.

The next question involves the individual allotment of Pharo Fulsome; the plaintiff contending that it is an ancestral estate, and that she, therefore, is entitled to inherit an undivided one-half interest in said allotment, since Pharo Fulsome acquired his right to allotment as much by reason of his mother being a member of the Chickasaw tribe of Indians as of his father. If, under the law of this state, an allotment to a member of the Five Civilized Tribes of Indians is an ancestral estate, then the plaintiff Jane Gray is entitled to inherit an undivided one-half interest in said allotment. If it is not an ancestral estate. she must be excluded from such inheritance. Roberts v. Underwood, 38 Okla. 376, 132 P. 673; Id, 237 U. S. 386, 35 S. Ct. 608, 59 L. Ed. 1007; Pigeon v. Buck, 38 Okla. 101. 131 P. 1083; Id., 237 U. S. 386, 35 S. Ct. 608, 59 L. Ed. 1007; Thorn v. Cone, 47 Okla. 781. 150 P. 701; Buck v. Simpson, 65 Okla. 265, 166 P. 146, L. R. A. 1918F, 604; Johnson v. Dunlap. 68 Okla. 216, 173 P. 359; Whitener v. Moss, 71 Okla. 57, 175 P. 223; Dailey v. Benn, 81 Okla. 285, 198 P. 323.

There are but two characters of estate known to our jurisprudence. An estate is either ancestral or nonancestral. In some jurisdictions the latter is termed "new acquisition" or "purchase." Chancellor Kent, Vol. 4 (14th Ed.) p. 430, defines these estates thus:

"All the modes of acquiring title to land are reducible to title by descent and by purchase, or, according to the better distribution of Mr. Hargrave, into title by act or operation of law, and title by purchase, or by the act or agreement of the parties."

It is absolutely necessary to determine the source from whence an estate comes before you can determine the nature of it, and then it is the duty of the court to apply the law to the estate as it is found and not the estate to the law.

The members of the Chickasaw and Choctaw Tribes of Indians. by agreement with the United States government in 1855, purchased territory west of the Mississippi river described by metes and bounds which was afterward known as the Chickasaw and Choctaw Nations. This property was to be held in common by the members of said nations and their heirs and successors forever, so that each and every member of either tribe should have an equal undivided interest in the whole. In 1897 the United States government entered into an agreement with the Chickasaw and Choctaw Nations providing for the distribution and the allotment of the lands held in common by them. Under this agreement, before any member of these tribes was permitted to participate in the lands or share in the distribution of them, he was required to make proof that he was of Indian blood (except of course, intermarried citizens).

Allotment certificates and patents described the lands set apart to the various allottees as their distributive share of the lands belonging to such nation. The act by which the property was distributed cannot be referred to as a grant, but is referred to as an allotment, and partakes of the nature of a partition of an estate by the heirs or the tenants in common. The right to the property vested long prior to the allotment. Pharo Fulsome acquired his right to the land in question by reason of his membership in the tribe. It was his birthright by reason of his Indian blood. It came to him by the blood of his tribal parent, and not by purchase, nor can it be said it was given to him by some one from whom he could not inherit by operation of law. The first appellate court to define the nature and character of the estate of an Indian allotment was the Eighth Circuit Court of Appeals, in the case of Shulthis v. McDougal et al., 170 F. 529. 95 C. C. A. 615. This case was later affirmed by the Supreme Court of the United States in the case of McDougal v. McKay, 237 U. S. 372 35 S. Ct. 605, 59 L. Ed. 1001. also 43 Okla. 261, 142 P. 987. It was fol

lowed by the same court in Pigeon v. Buck, supra, and in Roberts v. Underwood, supra. These decisions established the nature and character of an allotment of lands to a member of the Five Civilized Tribes by blood to be more nearly analogous to estates of inheritance than of purchase or a new acquisition, and hence held them to be ancestral estates, and applied the Arkansas statutes of descent and distribution to the estates, and distributed the lands accordingly.

In each of the following cases heretofore decided by this court, it was held that an allotment of land to an Indian by blood is an ancestral estate. Pigeon v. Buck, supra; Thorn v. Cone, supra; and Hill v. Hill, supra; Buck v. Simpson, supra; Johnson v. Dunlap, supra; Whitener v. Moss, supra; and Dailey v. Benn. supra; Finley v. Thompson, 68 Okla. 250, 174 P. 535; Ned v. Countiss, 84 Okla. 138, 203 P. 168; In re Lewis' Estate, 100 Okla. 283, 229 P. 483; Baldridge et al. v. Caulk. 110 Okla. 185, 237 P. 453. This court, in the case of Ned v. Countiss, supra, said:

"It cannot be said that the land allotted to Linnie Reed was a mere gift. She acquired her rights thereto because of the blood of her tribal parents. The land allotted to her cannot be termed a new acquisition by her, but should be termed as an inheritance from her parents as members of the tribe. Shulthis v. McDougal, 170 F. 529 [95 C. C. A. 615]; Pigeon v. Buck, 38 Okla. 101, 131 P. 1083. 237 U. S. 386 [35 S. Ct. 608], 59 L. Ed. 1007; McDougal v. McKay. 43 Okla. 261, 142 P. 987. 237 U. S. 372, 59 L. Ed. 1001; Thorn v. Cone et al., 47 Okla. 781. 150 P. 701; Whitener v. Moss, 71 Okla. 57, 175 P. 223; Dailey v. Benn, 81 Okla. 285, 198 P. 323. And the estate being ancestral, upon her death one-half of said estate ascended to her father and one-half to her mother. Upon the death of her father, Kit Reed, his estate descended to his posthumous child and upon the death of said child the estate that came to it by its father descended to the heirs of the father. Section 2531. Mansfield's Statutes of Arkansas; Thorn v. Cone et al., supra, Finley v. American Trust Co. et al., 51 Okla. 489. 151 P. 865; Kelly v. McGuire, 15 Ark. 555. And as the plaintiffs are heirs of the father. the title to one-half of the land involved passed to them."

It is argued, since the allottee in each of the cases above cited died prior to statehood, that an individual allotment was held to be an ancestral estate for the purpose of applying the applicable provisions of chapter 49 of Mansfield's Digest of the Laws of Arkansas in force in Indian Territory prior to statehood, and that a different rule would apply in the case of allottees dying since

statehood under the Oklahoma law providing for the descent and distribution of estates of deceased persons. which, it is contended. is quite different in many material respects from the provisions of Mansfield's Digest above referred to.

Let us then examine the provisions of Mansfield's Digest in force prior to statehood and construed in the cases above cited and the provisions of our statute pertaining to estates of this character. The chapter on descents, being chapter 49 of Mansfield's Digest of Arkansas, contains only two sections pertaining to estates of this character, being sections 2531 and 2533, which are as follows:

"Sec. 2531. In cases where the intestate shall die without descendants, if the estate come by the father, then it shall ascend to the father and his heirs; if by the mother, the estate, or so much thereof as came by the mother, shall ascend to the mother and her heirs; but if the estate be a new acquisition it shall ascend to the father for his lifetime, and then descend. in remainder, to the collateral kindred of the intestate in the manner provided in this act; and, in default of a father, then to the mother, for her lifetime; then to descend to the collateral heirs as before provided."

"Sec. 2533. Relations of the half-blood shall inherit equally with those of the whole blood in the same degree; and the descendants of such relatives shall inherit in the same manner as the descendants of the whole blood, unless the inheritance come to the intestate by descent, devise, or gift, of some one of his ancestors, in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance."

Section 11301, C. O. S. 1921, is the section of our statute on descent and distribution, and same contains nine subdivisions, the seventh and eighth of which are as follows:

"Seventh. If the decedent leave several children, or one child and the issue of one or more children, and any such surviving child dies under age, and not having been married. all the estate that came to the deceased child by inheritance from such decedent, descends in equal shares to the other children of the same parent, and to the issue of any such other children who are dead, by right of representation.

"Eighth. If, at the death of such child who dies under age, not having been married, all the other children of his parents are also dead, and any of them have left issue, the estate that came to such child by inheritance from his parent descends to the issue of all other children of the same parents; and if all the issue are in the same degree of kindred to the child, they share the

estate equally; otherwise, they take according to the right of representation."

Section 11310, C. O. S. 1921, also provides as follows:

"Kindred of the half-blood inherit equally with those of the whole blood in the same degree, unless the inheritance come to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestors must be excluded from such inheritance."

It will be seen from an examination of the provisions of our statute above quoted that Oklahoma has recognized ancestral estates; the above quoted portions of our statute being the law applicable thereto. A careful examination and analysis of those portions of our law and those of Mansfield's Digest above quoted will disclose that there is very little, if any, material difference; section 11310 of our statute being almost identical with section 2533 of Mansfield's Digest. This court, in construing section 11310, supra, has followed the Arkansas construction of section 2533, Mansfield's Digest, supra. Thompson v. Smith, supra.

This being true as to allotments actually inherited, then is not the allotment given to a citizen of the Five Civilized Tribes by reason of his membership in the tribe, his membership, and therefore his right to allotment being acquired through or from the blood of his tribal parents, as much ancestral as lands actually acquired by descent, and should not the same rule of inheritance therefore apply as to lands acquired directly by inheritance from an ancestor actually seized during a lifetime? We think so.

In the case of Martin v. Martin, 98 Ark. 93, 135 S. W. 348, the Supreme Court of Arkansas defines an ancestral estate as follows:

"Land is to be considered an ancestral estate where it has come from or by or on the part of the father or mother of the owner by gift, devise, or descent either mediately or immediately from them or from any person in their respective lines, and will be a new acquisition if derived from any source other than by descent, devise, or gift from any relative in the paternal or maternal line, as by a son from father or mother for a valuable consideration."

That definition, we think, applies with equal force in Oklahoma. In fact, an ancestral estate is the same wherever you find it. Where different rules of descent have been applied to estates of this character, it was not on account of an ancestral estate being one thing in one jurisdiction and something else in another, but on account of different state statutes relating to these estates; the court of each state applying its law to the estate as it is found.

Chancellor Kent certainly stated the rule correctly when he said:

"In determining the nature of an estate, one must first determine its origin."

In Ohio, in Brown v. Whaley, 58 Ohio St. 654, 666, 49 N. E. 479, 480 (65 Am. St. Rep. 793) we find this definition:

"'Ancestral property' is realty which comes to one 'by descent or devise from a now dead ancestor, or by deed of actual gift from a living one; there being no other consideration than that of blood as distinguished from "nonancestral property" which is realty which comes to one in any other way.'"

Was not the sole and only consideration by which Pharo Fulsome acquired his allotment, in the first and last analysis, that of blood? He was placed on the tribal roll on account of the blood of his tribal parents. But for that blood he would not have been enrolled, and therefore would not have received an allotment. Can it be said that this allotment "is realty which came to him in some other way?" If so, how? Surely not by purchase. It was not acquired through any act of his, nor can the right to it be lost or destroyed through any act of his. It was, as heretofore stated herein, and as was said in Shulthis v. McDougal, supra, his birthright.

We can see no good reason to follow a different rule in Oklahoma than that obtaining in the Indian Territory prior to statehood, especially since that rule, we think, is practicable, sound in reason and in law, and supported by a long line of cases.

In the case of Hill v. Hill, supra, this identical question was involved, the allottee therein having died after statehood, as in this case, and the court held the allotment of land was an ancestral estate, and the half-brother not of Indian blood was excluded from inheriting. We therefore conclude that an allotment of land to a member of the Five Civilized Tribes by blood is at least analogous to an ancestral estate, and, while not coming strictly within the terms of ancestral estates as usually defined, it more nearly approximates it than it does nonancestral estate or new acquisition, and will therefore be so considered in applying the applicable provisions of our law, and, an allottee whose father and mother were both of Indian blood dying intestate, unmarried, and without issue, his estate ascends to them and their heirs in equal shares. To hold otherwise it would be necessary to specifically overrule

Hill v. Hill, supra, decided by this court in 1916, and therefore the established law in this state for almost 10 years, and for that reason we would be very reluctant to disturb it even though we entertained a view contrary to the doctrine therein announced, but we do not need to resort to the doctrine of stare decisis in order to uphold the rule therein announced, for our own code specifically provides for ancestral estates, and the reasoning in the cases above cited, applying and construing the applicable provisions of chapter 49, Mansfield's Digest of the Laws of Arkansas, applies with equal force, we think, to the sections of our law above quoted, and we therefore decline to overrule Hill v. Hill, supra, but we prefer, for the reasons herein stated, to follow the rule therein announced, and reaffirm the same as the law of this jurisdiction.

Pharo Fulsome left a half-brother, Frank Fulsome, on his father's side, and a grandmother, Jane Gray, plaintiff herein, on his mother's side. Under the Oklahoma statute they are related to him in the same degree; the grandmother in the direct relation, and the half-brother collateral. His right of allotment coming to him both through the father and mother, then it must go to their heirs equally. It follows then that Frank Fulsome and the plaintiff, Jane Gray, each inherited an undivided one-half interest in the individual allotment of Pharo Fulsome.

The judgment of the district court of Pontotoc county is therefore reversed and the cause remanded, with directions to enter judgment for the plaintiff in accordance with the views herein expressed.

BRANSON, V. C. J., and MASON, HARRISON, PHELPS, LESTER, CLARK, and RILEY, JJ., concur.

NICHOLSON, C. J., dissents.

Note.—See under (1) 18 C. J. p. 833 §59; 31 C. J. p. 524 §96; (2) 18 C. J. p. 817 §17. (3) 18 C. J. p. 816 §16. (4) 31 C. J. p. 523 §96. (5) 31 C. J. p. 524 §96.