## COOPER v. SPIRO STATE BANK.

No. 18265. Opinion Filed April 10, 1928.

Rehearing Denied July 9, 1929.

Dissenting Opinion, Aug. 3, 1929.

E. D. Means, for plaintiff in error.

A. U. Davidson, for defendant in error.

Bailey & Hammerly, amici curiae.

HUNT, J. This is an appeal from a judgment rendered by the district court of Haskell county in an action wherein the defendant in error herein was plaintiff, and the plaintiff in error was defendant. For convenience, the parties will be referred to as they appeared in the trial court. Plaintiff brought this suit to quiet title to certain lands in Haskell county, same being the allotment of Elizabeth Perry, a full-blood Choctaw Indian, who died in Haskell county on March 4, 1912, intestate, unmarried and without issue, being a minor about 12 years of age at the time of her death. She left surviving her, her father, Stephen Perry, a full-blood Choctaw Indian, and two sisters, Levina Cooper, nee Perry, defendant herein, and Annie Perry. · Her mother, Siney Perry, a full-blood Choctaw Indian, died in 1906.

The sole question presented for determination by this appeal is whether or not, under the laws of descent and distribution in force in this state at the time of the death of Elizabeth Perry, to wit, on March 4, 1912, her father, Stephen Perry, inherited her entire allotment, as contended by the plaintiff, or whether or not same descended one-half to the father and one-half to the surviving sisters of said Elizabeth Perry, as heirs of her mother, Siney Perry, as contended by defendant. Judgment was rendered by the district court in favor of plaintiff, holding subdivision 2, section 11301, C. O. S. 1921, governed the devolution of the estate here in question, and that the surviving father took same to the exclusion of the surviving sisters.

Defendant appeals, assigning as error the single proposition, to wit, the failure of the trial court to hold that the surviving father inherited only an undivided one-half interest in said land, and that the surviving sisters inherited the other one-half interest as heirs of the mother. In support of this contention, defendant cites and relies upon Gray v. Chapman, 122 Okla. 130, 243 Pac. 522, and Hill v. Hill, 58 Okla. 707, 160 Pac. 1116, and In re Heirship of Yahola No. 15783, decided Feb. 16, 1926 (not yet final and not yet officially reported), and seems to construe these cases as holding that under such a state of facts as here presented the land here in question was an ancestral estate, and therefore descended under subdivisions 7 and 8 of section 11301, C. O. S. 1921, same being as follows:

"Seventh. If the decedent leave several children, or one child and the issue of one or more children, and any such surviving child dies under age, and not having been married, all the estate that came to the deceased child by inheritance from such decedent descends in equal shares to the other children of the same parent, and to the issue of any such other children who are dead, by right of representation.

"Eighth. If, at the death of such child who dies under age, not having been married, all the other children of his parents are also dead, and any of them have left issue, the estate that came to such child by inheritance from his parent descends to the issue of all other children of the same parent; and if all the issue are in the same degree of kindred to the child, they share the estate equally; otherwise, they take according to the right of representation."

From an examination of the cases above cited, it is readily apparent that the facts upon which they were decided are entirely different from the facts here, and that the conclusions of law announced in said cases are in no way applicable here, and are therefore not controlling or even persuasive on the question here presented. In our judgment, the conclusion reached and judgment rendered by the trial court under the admitted facts herein is the only judgment which could have properly been rendered herein, and there is really no occasion for any confusion or any difficulty in determining so simple a question as here presented. An examination of our statute on descent and distribution, being section 11301, C. O. S. 1921, discloses beyond any question that subdivision 2 of said section is the only portion of said statute that could by any manner of reasoning be made applicable to the facts here presented:

"Second. * * * If decedent leave no issue, nor husband nor wife, the estate must go to the father or mother, or if he leave both father and mother, to them in equal shares. * * *"

Elizabeth Perry is the decedent here. She left no issue, nor husband nor wife. The estate must therefore go to the father or mother, or, if both survive, to them in equal shares. If, as in this case, only one parent survive, then it goes to that surviving parent. In this case the father, being the only surviving parent, takes the entire estate of

which his deceased daughter died seized and possessed. It is therefore clear that the judgment of the trial court is correct and should be in all things affirmed. That said subdivision 2 of section 11301 is the applicable statute to the facts here presented is so free from doubt and same so thoroughly and completely supports the conclusion we reach, we deem the citation of authorities on this question wholly unnecessary.

However, we are not without ample authority to support our conclusion herein, and in view of the fact that counsel for defendant seems to rely so strongly on Gray v. Chapman, supra, as sustaining his position, we think it well at this time to notice some of the cases wherein this particular question has heretofore been passed on by this court, and to distinguish them, and the instant case as well, from Gray v. Chapman, supra. In writing the opinion in Gray v. Chapman, supra, it was not the purpose and intent of the writer nor of this court to change in any way or write out of existence by judicial decision any portion of the statutes of this state on descent and distribution as it then existed and has existed since statehood, but merely to apply the applicable provisions of our statute to the facts as we found them in that case. Such, however, would be the effect of our holding in that case if the construction of that opinion as contended for here were upheld. Counsel for defendant quoted at length from Gray v. Chapman in the oral argument of the instant case, and we are not unmindful of the fact that some of the language used in that opinion, when considered alone and without regard to its context or the particular facts under consideration, might be used in an effort to sustain defendant's position here. It should be kept in mind, however, that Gray v. Chapman was a case wherein kindred of the half blood were involved. We are further not unmindful of the fact, after a further and careful analysis of our opinion in Gray v. Chapman and consideration of same in connection with the questions here presented, and the facts there presented, that perhaps our discussion as to ancestral estates took too wide a scope. It should also be borne in mind, however, that even this language should not be considered apart from its context, nor without regard to the particular facts involved and the question therein under consideration, and when so considered, it should be clear that our purpose was to confine our discussion to a determination of the meaning of the language in the half-blood statute only, it being the only statute involved.

In this case (Gray v. Chapman) we merely followed Hill v. Hill and applied the rule of ancestral property to the facts before us. It was admitted in the briefs filed by counsel for plaintiff in error in Gray v. Chapman that:

"While Oklahoma has no statute similar to section 2531, Mansfield's Digest of the Laws of Arkansas, providing a different course of descent generally with respect to ancestral estates and new acquisitions, subdivisions 7 and 8 of section 8418, R. L. 1910, are closely akin in a limited way to section 2531, Mansfield's Digest."

These subdivisions (7 and 8) were not relied on in Hill v. Hill, and same were not construed in that case, neither were same relied on in Gray v. Chapman, and our reference to same in that case was merely to call attention to the fact that they and section 11310, the half-blood statute which we had under consideration, were the only sections of our statute on descent and distribution recognizing ancestral estates. We were well aware that subdivision 7 had previously been construed by this court as not applicable in cases involving a similar state of facts as here presented, and we certainly had no intention of overruling by implication or otherwise these cases, which had consistently been followed by this court without exception, and had therefore become a rule of property long prior to Gray v. Chapman; our decision in that case, as in the case of Hill v. Hill, being based on the half-blood statute, to wit, section 11310. Subdivision 7 clearly applies only in cases where a parent has died leaving several children or one child and the issue of one or more children, and if any such surviving child dies under age and not having been married, the estate inherited by it from its deceased parent goes to the other children of said deceased parent and to the issue of any such other children who are dead. This statute is simple, plain, and unambiguous and provides for the descent and distribution of property acquired in the manner therein set forth, and no other. The decedent in this case is Elizabeth Perry, who left no children, and by no stretch of the imagination or strained statutory construction could same be construed to govern the devolution of the allotment of which Elizabeth Perry died seized and possessed.

In order for subdivision 7 to become operative, there must first be a death of one leaving children or child and issue of a deceased child or children, and of necessity, therefore, refers to the death of a parent. With that condition as its premise, it then

provides that if any such surviving child dies under age and not having been married, and therefore without issue, all the estate that came to the deceased child by inheritance from said decedent, meaning, of course, the estate of which said child became seized and possessed upon the death of its parent, descended in equal shares to the other children of the same parent and to the issue of any such other children who are dead, by right of representation.

Therefore, even conceding as we said in Gray v. Chapman, supra:

"An allotment of land to a member of the Five Civilized Tribes by blood is at least analogous to an ancestral estate, and, while not coming strictly within the terms of ancestral estates as usually defined, it more nearly approximates it than it does non-ancestral estate or new acquisition, and will therefore be so considered in applying the applicable provisions of our law"

—it becomes immaterial whether the estate here in question were ancestral or not, for we are met at the very threshold of the section of our statute on descent and distribution with subdivision 2, hereinbefore set out, which specifically provides for the devolution of property under such a state of facts as here presented without regard to the character of the estate. We will not look to the source of title unless particular statute under which descent is cast requires us to do so. Subdivision 2, supra, does not so require, while subdivisions 7 and 8 and section 11310 do so require. In order to sustain the contention of plaintiff in error herein, and apply subdivision 7, we would have to hold, first, that the word "decedent" in the first line of said subdivision 7 referred to the deceased mother of Elizabeth Perry, allottee herein, who died at a time when said Elizabeth Perry was seized and possessed of the land here in question; and, further, that said land came to her by inheritance from her said mother. In other words, that she inherited same from her mother, while her mother was yet alive. There is nothing in the statute of Oklahoma or decisions of this court which would justify such a holding. That there can be no inheritance from the living is too well settled to require discussion or the citation of authorities. The very language of said subdivision 7 precludes the possibility of it ever applying to the succession of an individual Indian allotment upon the death of the allottee. Counsel has not cited any case where it has ever been so applied, and after a most careful search of all the authorities we fail to find any. Indeed there are none.

In Jefferson v. Cook, 53 Okla. 272, 155

Pac. 852, decided in 1916, this identical question was involved under facts almost identical. The allottee died intestate, unmarried and without issue, leaving a father, and brothers and sisters of the whole blood; the mother having died prior to the death of the allottee, as here. It was contended in that case that subdivision 7 was the law applicable to this estate and that the father only took a half interest and the brothers and sisters, as heirs of the mother, took the other half. With reference to this contention, this court had this to say:

"There is no merit in the contention that the seventh subdivision of this section is the law applicable to the devolution of this estate. * * *

"This for the reason that it is not true, as contended, that Peggy Ann inherited this allotment, one-half from her father, John J. Jefferson, Jr., and one-half from her mother, Mary Alice Jefferson. While heretofore we may have indulged in fiction in construing the laws governing the devolution of Creek allotments, we have not gone so far as to hold that one can inherit from the living. And such we would do if we would here hold that this allottee, who received deeds to her allotment April 10, 1903, and filed them of record April 17, 1903, inherited any part of the land in controversy from her mother, who died June 9, 1905, or any part from her father, who is still living. And if we should so hold it might be difficult to say why the moiety thereof inherited from the mother should not be chargeable with the payment of the mother's debts in the hands of her administrator.

"And there is nothing in the case of Shulthis v. McDougal, 170 Fed. 529, 95 C. C. A. 615, or any other case that we know of, which would justify such holding. It is contended that this case held Creek allotments to be ancestral estates, and that it follows that this allotment was derived by inheritance from the father and mother of Peggy Ann. Not so. To be sure the case holds the allotment to be a birthright, and comes to the allottee by the blood of his or her tribal parent or parents, as the case may be; but that case far from holds that it comes thus by inheritance, but, on the contrary, does hold:

" 'The lands of that tribe fit into neither of the classes mentioned in the statute (reference being made to an ancestral estate and new acquisition). They did not come to a member of the tribe by inheritance from any ancestor, nor could they be spoken of with propriety as a purchase.'

"But why refine on the character of this estate to determine whether it is ancestral or not? The statute is clear. Section 8418, supra, reads:

" 'When any person having title to any

estate not otherwise limited by marriage contract, dies without disposing of the estate by will, it descends and must be distributed in the following manner.'

"Which means that, when any person shall die intestate having title to any estate or any kind of an estate, no matter how acquired—whether by descent or purchase, or whether it is ancestral or a new acquisition—not otherwise limited, etc., if deceased leaves no issue, nor husband nor wife, the estate must go to the father," etc.

The next case wherein this identical question was involved was Crouthamel v. Welch, 53 Okla. 288, 156 Pac. 302. The opinion in this case was written by Justice Sharp and filed on March 14, 1916, the same day on which the petition for rehearing in Jefferson v. Cook, supra, was overruled. The court, after stating that plaintiff relied on subdivision 7, cited with approval Jefferson v. Cook, supra, as follows:

"The same position was taken in Jefferson v. Cook, supra, where it was said by the court that the contention was without merit, and that as the intestate left no issue, nor husband nor mother, the father took the estate to the exclusion of the brothers and sisters, and that the seventh subdivision of section 8418 had no bearing on the case. It must be remembered that the decedent was not the mother, Eliza, but, instead, Eliza's unmarried daughter, Amanda. The former's estate, if she left one, is not involved; it is the estate of Amanda. The section of the statute applies only where 'decedent leaves children, or one child and the issue of one or more children.' Where such is the case, and any such surviving child dies under age, and not having been married, all the estate that came to the deceased child by inheritance from such decedent descends in equal shares to the other children of the same parent, and to the issue of any other such children who are dead, by right of representation."

Further, as to the purpose of such statutes as subdivision 7, the court had this to say:

"The purpose of such statutes is shown by a number of authorities. In Nash et ux. v. Cutler, 16 Pick. (Mass.) 491, it appears that a statute of that commonwealth provided:

" 'That when any child shall die under age, not having been married, his share of the inheritance, that came from his father or mother, shall descend in equal shares to his father's or mother's other children then living, respectively, and to the issue of such other children as are then dead, if any, by right of representation.'

"In determining the meaning and object of the statute, it was said by Chief Justice Shaw:

" 'The purpose of the whole section is to regulate the descent of intestate estate. The last clause cited, the proviso, does not make a rule for a separate and distinct case, but only modifies one of the rules under given circumstances. It is an exception from the generality of the antecedent rule. The whole purpose is the descent of intestate estate; and we think the effect is, that where upon the descent of an estate to children, one ·of them shall happen to die in infancy, that is, at any time, before arriving at the age at which, by law, he has the power of disposing of his estate, and before he has by marriage contracted obligations and established new connections which change his relative situation to others, his share of the inheritance, that is, his portion of the intestate estate, for the descent of which this statute is now providing, shall go just in the same manner as if such child had died in the lifetime of the ancestor, or, in other words, to those who would have taken the same share if such child had not existed. It directs that it shall go to the other children of the parent from whom it came, which it would have done, had the child so dying not been in existence at the time of the decease of such parent.'

"Again, in the later case of Goodrich v. Adams, 138 Mass. 552, it was said:

" 'The general purpose of the statutes undoubtedly was, as is said in Nash v. Cutler, that if the child died under age, and not having been married, the estate should descend in the same manner as if the child had died in the lifetime of the ancestor.'

"In Burke v. Burke, 34 Mich. 451, the above rule from Nash v. Cutler is quoted at length, and it is held that by the statute of Michigan (Comp. Laws 1871, sec. 4309, subd. 6), where upon the descent of an estate to children, one of them dies under age, not having married, his share of the inheritance goes to those who would have taken the same had such child died in the lifetime of the ancestor; i. e., to the other children of the intestate, and to the issue of such others as may have died, by right of representation—the intent being rather to give a new destination to that portion of the parent's estate which has in some measure failed to accomplish the design of the Legislature by the premature death of such child, than to provide a new and distinct rule of distribution for such child's own estate. In Perkins v. Simonds, 28 Wis. 90, the rule announced by Chief Justice Shaw in Nash v. Cutler was approved and followed.

"The statutes construed in the above cases are similar, if not alike in meaning, to that provision of our statute relied upon by counsel for plaintiff in error. Its purpose we have shown, only that its want of application may more readily be demonstrated. Amanda Folsom, the decedent, having died unmarried and without issue, the seventh

subdivision of section 8418 in nowise controls the devolution of her estate. On the other hand, she having died after the death of her mother. Eliza, her entire estate ascended to her father, Israel Folsom."

Likewise, in Jackson, nee Roe, v. McKay, 89 Okla. 119, 213 Pac. 876, and Roe v. Anco Oil Co., 96 Okla. 87, 219 Pac. 922, it was held that the surviving father inherited the allotment of his deceased minor son, who died intestate, unmarried, and without issue, to the exclusion of the brothers and sisters, according to the provisions of subdivision 2, no contention being made as to subdivision 7 applying; but in McKay v. Roe, 96 Okla. 87, 219 Pac. 921, involving the same allotment as in the two cases last above cited, the contention was made, as here, that subdivision 7 was the controlling statute, and the court followed and cited with approval Jefferson v. Cook and Crouthamel v. Welch, supra.

It is very clear, we think, from the foregoing authorities, that Hill v. Hill, supra, cannot be accepted as authority for the position taken here by defendant, and Gray v. Chapman, following Hill v. Hill, likewise cannot be so accepted. We reiterate that the ion in Gray v. Chapman merely followed opinion Hill v. Hill, and did not extend or enlarge the rule therein announced.

We did say in Gray v. Chapman, and we say now, ancestral estates have been recognized in this state, and we quoted the sections of our statute referring thereto for comparative purposes only and to show to just what extent they had been recognized. In any case where descent is cast under such a state of facts as to make such sections applicable, we will consider and apply said sections, to wit, subdivisions 7 and 8, section 11301, and section 11310, C. O. S. 1921, accordingly, but only in such cases.

It was admitted in the oral argument that subdivisions 7 and 8 were exceptions to the general provisions going before, which is undoubtedly true. McKay v. Roe, supra. Said subdivisions will, therefore, be strictly construed and limited to the exceptions named, and will not be enlarged or extended by statutory construction. The application of subdivision 7 was involved in Maroney v. Tannehill, 90 Okla. 224, 215 Pac. 938, wherein this court held that where a woman died intestate, leaving a husband and several children, and two of the minor children later died intestate, unmarried and without issue, the interest which they had inherited from their mother passed to the surviving brothers and sisters to the exclusion of the father under subdivision 7 of section 8418.

R. L. 1910 (subdivision 7 of section 11301, C. O. S. 1921), these facts clearly bringing the devolution of the estate inherited by the two deceased children from their mother within the provisions of said subdivision 7.

Subdivision 7 was again relied on as controlling the devolution of an estate under a similar state of facts to those last above cited in He-ah-to-me v. Hudson, 121 Okla. 173, 249 Pac. 138, and this court followed Maroney v. Tannehill, supra, and cited with approval De Castro v. Barry, 18 Cal. 97, and after quoting said subdivision 7 of our statute, had this to say:

"This section of the statute is identical with the California statute governing descents and distribution, and the question here presented was before the California court in De Castro v. Barry, 18 Cal. 97, wherein the wife died leaving surviving her husband and two infant children. Soon thereafter one of the children died, and the court held that the estate of the wife and mother descended in equal shares to the husband and two children, but that when one of the children died in infancy its share went, not to the father, but to the surviving child. And in commenting upon the contention there presented, the court said:

"The respondent's counsel contends that this case falls within the seventh clause of the statute, and such is our opinion. The language of the clause is unequivocal. The act is carefully drawn, and we must suppose embodies the deliberate meaning of the Legislature. We must give effect to this meaning without interpolating any new terms or qualifications, unless this be necessary to reconcile conflicting and contradictory expressions. The clause in question provides for a specific and peculiar state of facts; therefore, there is no contradiction between it and the general provisions going before, for these last provide the usual rule, while the latter clause provides the unusual rule, or the rule governing the particular case recited. This is not a contradiction, but only an exception. It is as if the second clause read: "If the intestate shall leave no issue, or husband, or wife, the estate shall go to his or her father; provided, that if any person shall die leaving several children, and any one of them shall die unmarried, etc., the share of such decedent child coming from such deceased parent shall go to the surviving children of the same parent." ' "

It is apparent from these authorities that this construction of subdivision 7 has been consistently adhered to by this court, as well as the courts of last resort of other jurisdictions having a similar statute. That this is a reasonable and proper construction and fully carries out the intention of the

lawmakers in enacting said subdivision, it seems to us there can be no doubt. If therefore follows, as hereinbefore pointed out, that same does not control the devolution of the estate here in question, and the judgment of the district court of Haskell county was in all things correct, and the same must be, and is hereby, affirmed.

HARRISON, PHELPS, LESTER, (and CLARK, JJ., concur.

HEFNER, J., not participating.

---

RILEY, J. (dissenting). My purpose in dissenting is that the laws of descent and distribution be not lightly considered, and further that "dead wood," if any, be cleared away so that the humblest citizen may know and be informed as to his property rights. I further base what I have to say upon the proposition, trite but true that it is not so important as to what the law is concerning property rights, as it is that it be stable and inflexible.

The author of the opinion herein says that subdivision 2 of section 11301 is the applicable statute, and that fact is so free from doubt that citation of authorities is unnecessary, and that said subdivision of said section is the only portion of the statute that could by any manner of reasoning be made applicable to the facts presented. But the fact that the proposition, like Banquo's ghost, is forever coming back, tends to dispute the assertion as well as the fact that in a prior case the same author employed a manner of reasoning leading to the contrary conclusion.

The facts are correctly stated in the opinion. The contention denied by the opinion is that the allottee having died a minor, unmarried, intestate and without issue, seized and possessed of her allotments of land which came to her by and through her father and mother, the same being in the nature of an ancestral estate, or an estate of inheritance, one-half having come by and through the mother and one-half through the father, subdivisions 7 and 8, supra, are exceptions to the proviso in subdivision 2, and provide for the descent to the parent of an estate of which a child dies seized, under specified conditions of minority, lack of issue and marriage. That exception is that the surviving parent is excluded from inheriting, and the property descends to the brothers and sisters of the deceased or their issue by right of representation.

It is said in the opinion that Gray v. Chapman, 122 Okla. 130, 243 Pac. 522, is not con-

trolling or even persuasive on the question here presented, and much space is devoted in distinguishing it. It is my opinion that it is controlling, if it is to exist as a rule of law, and that it cannot be rightfully distinguished.

The author of Gray v. Chapman, in attempting to narrow the scope of the law there announced, now says:

"That perhaps our discussion as to ancestral estates took too wide a scope."

It was also said in that opinion that the language used should not be considered apart from the particular facts there involved, and that "our purpose was to confine our discussion to a determination of the meaning of the language in the half-blood statute only, it being the only statute involved."

In Gray v. Chapman that excludes Frank Fulsome, the half-brother of Pharo Fulsome, from inheriting by reason of section 11310, the one-half blood statute. Moreover, this court there compared the provisions of Mansfield's Digest, in force prior to statehood, with the provisions of our statute, pertaining to estates of the character considered and said: "There is little, if any, material difference," and said, further, "that Oklahoma has recognized ancestral estates, the above-quoted portions of our statute being the law applicable thereto," which above-quoted portions evidently referred to subdivisions 7 and 8.

In my opinion Gray v. Chapman, supra, stamped an allotment received by reason of membership in a tribe as an ancestral estate and applied the rules of inheritance thereto as provided by subdivisions 7 and 8, wherein it was said:

"This being true as to allotments actually inherited, then is not the allotment given to a citizen of the Five Civilized Tribes by reason of his membership in the tribe, his membership, and therefore his right to allotment being acquired through or from the blood of his tribal parents as much ancestral as lands actually acquired by descent, and should not the same rule of inheritance therefore apply as to lands acquired directly by inheritance from an ancestor actually seized during a lifetime? We think so.

There this court said that in the application of the laws of descent and distribution of Oklahoma, the same rule of descent shall be applied to the individual allotment of a deceased allottee as if by actual inheritance from the ancestor, and such expression followed the setting out of subdivisions 7 and 8.

This court then decided that an allotment of land to a member of the Five Civilized Tribes by blood is at least analogous to an ancestral estate, and will therefore be so considered in applying the applicable provisions of our law. The opinion in Gray v. Chapman, supra, repeatedly uses language indicating that the author had in mind the three quoted provisions of the law of Oklahoma with reference to ancestral estates, and not simply the half-blood statute. Examples are: (1) "And an allottee whose father and mother were both of Indian blood, dying intestate, unmarried, and without issue, his estate ascends to them and their heirs in equal shares," and (2) "* * * For our own Code specifically provides for ancestral estates, and the reasoning in the cases above cited applying and construing the applicable provisions of chapter 49 of Mansfield's Digest of the Laws of Ark. applies with equal force, we think, to the sections of our law above quoted. * * *"

What sections were quoted? Subdivisions 7 and 8, sections 11301 and 11310, supra.

Gray v. Chapman closes with this paragraph and thought:

"Pharo Fulsome left a half-brother, Frank Fulsome, on his father's s de, and a grandmother, Jane Gray, plaintiff herein, on his mother's side. Under the Oklahoma statute they are related to him in the same degree, the grandmother in the direct relation, and the half-brother, collateral. His right of allotment coming to him both through the father and mother, then it must go to their heirs equally. It follows, then, that Frank Fulsome and the plaintiff, Jane Gray, each inherited an undivided one-half interest in the individual allotment of Pharo Fulsome."

That statement and judgment is not based on section 11310, supra, and Frank Fulsome was not excluded from inheriting all the estate by reason of the half-blood statute, but to the contrary he was held to be the heir of his father, and, as such, inherited a one-half interest, and Jane Gray, the grandmother on the mother's side, inherited a one-half interest as heir of the mother.

In syllabus, par. 1, of the opinion herein, it is said:

"In determining the descent of intestate's estates, it is not necessary to look to the source of title unless particular statute under which descent is cast requires us to do so. Subdivision 2, section 11301, C. O. S. 1921, does not so require, while subdivisions 7 and 8 of said section 11301, and section 11310, C. O. S. 1921, do so require."

Whereas in syllabus, par. 3, of Gray v. Chapman, it is said:

"In this jurisdiction estates are either ancestral or nonancestral. * * * The source or origin of an estate must be first ascertained before its nature or character can be decided, then the law of descent and distribution applied to it."

In the opinion stress is placed upon the necessity of determining the nature of the estate, and then applying the law to the estate rather than the estate to the law. It I understand it, those propositions are contradictory, and represent two diverse processes. Then, if in all cases the nature of the estate must first be determined, and if such an allotment more nearly approximates an ancestral estate, then the law applied to the estate as found, subdivisions 7 and 8, by the rule in Gray v. Chapman, would govern, rather than subdivision 2.

The case of In re Heirship of Yaholo Johnson, No. 15783, followed Gray v. Chapman, saying:

"An allottee dying possessed of an allotment of land, being an ancestral estate, leaving as his only heirs a maternal half-sister and two paternal first cousins, held that one-half of said allotment goes to the half-sister and an undivided one-half goes to the two first cousins in equal shares." (Not yet final.)

There is another feature of the opinion herein from which I anticipate trouble; that is, that it creates two kinds of ancestral property, contrary to the universal rule and something new to this jurisdiction.

For these reasons, I dissent.

MASON, C. J., concurs in this dissent.

Note.—See under (1) anno. L. R. A. 1916C, 902; 9 R. C. L. p. 37; 2 R. C. L. Supp. p. 739. (2) See "Descent and Distribution," 18 C. J. §16, p. 816, n. 15, 17; §22, p. 820, n. 67. "Indians," 31 C. J. §96, p. 524, n. 44.